PAUL WOLFGRUBER, Respondent, v UPJOHN COMPANY, Appellant.

Fourth Department, December 21, 1979

APPEARANCES OF COUNSEL

*Kernan & Kernan, P. C. (Andrea Lynch* of counsel), for appellant.

*Shults & Shults (Eric Shults* of counsel), for respondent.

## OPINION OF THE COURT

CARDAMONE, J. P.

Plaintiff Dr. Paul Wolfgruber has been a practicing physician for over 25 years. He prescribed defendant's antibiotic, Cleocin, for an infection he developed in 1974 and followed a course of self-treatment. The defendant, Upjohn Company, distributed to the medical profession free samples of Cleocin which contained package inserts warning of possible diarrhea and/or colitis from ingesting the drug. The Physician's Desk Reference also contained similar warnings respecting the use of Cleocin. This is the precise malady incurred by plaintiff as a result of his course of self-treatment. Plaintiff conceded that he knew of the drug since at least 1974 when defendant's "detail man" gave him free samples with descriptive literature. Prior to taking the drug himself, he prescribed it to 20 of his patients. His strict products liability and breach of warranty of merchantability of fitness suits against defendant withstood a motion for summary judgment to dismiss them. We reverse.

This drug products liability and warranty suit against Upjohn is based not on the failure of its drug to effect a cure, but rather on the conduct of the manufacturer in subjecting the consumer to a risk of side effects. Whether such a claim is legally viable is dependent upon an assessment of the adequacy of the warning or precautions provided by the manufacturer to the medical community which dispenses prescriptions.

Although New York courts have for a long time consistently held that there is a duty to warn and properly label drugs (*Laturen v Bolton Drug Co.,* 188 NY 574; *Thomas v Winchester,* 6 NY 397; *Donigi v American Cyanamid Co.,* 57 AD2d 760, affd 43 NY2d 935; *Halloran v Parke, Davis & Co.,* 245 App Div 727; *Wechsler v Hoffman-La Roche,* 198 Misc 540, mod 279 App Div 654; *Marcus v Specific Pharms.,* 191 Misc 285; *Fagan v McRae,* 169 NYS 577), the extent of the required warnings or how they are to be disseminated has to date not been precisely formulated. Because the manner of furnishing a warning for a drug to be marketed to the public differs from

that which is feasible for ordinary consumer products, the Federal statute and regulations enumerate specific requirements for drug labeling (US Code, tit 21, §§ 352-353; 21 CFR Parts 201-202, 310). With the exception of oral contraceptives (see 21 CFR 310.501), the warnings are not found in the packaging of the drug, but are furnished instead to the medical community as the "informed intermediary" between the manufacturer and the patient (see, e.g., *Magee v Wyeth Labs.,* 214 Cal App 2d 340; *McEwen v Ortho Pharm. Corp.,* 270 Ore 375; *Incollingo v Ewing,* 444 Pa 263). Since nonmedical consumers are legally precluded from "self-prescribing" prescription drugs, the physician's function is to evaluate a patient's needs, assess the risks and benefits of available drugs and then prescribe a drug, advising the patient of its risks and possible side effects *(Magee v Wyeth Labs., supra; Parke, Davis & Co. v Mayes,* 124 Ga App 224; *Kaspirowitz v Schering Corp.,* 70 NJ Super 397).

Thus, the manufacturer's liability, if any, is directly related to the adequacy of the warning provided (see, generally, Merrill, Compensation for Prescription Drug Injuries, 59 Va L Rev 1; Rheingold, Products Liability—The Ethical Drug Manufacturer's Liability, 18 Rutgers L Rev 947; Willig, The Comment *k* Character: A Conceptual Barrier to Strict Liability, 29 Mercer L Rev 545). The scope of the warning is the key factor in a drug products liability suit because prescription drugs are "[u]navoidably unsafe products". As explained in comment *k* of section 402 A of the Restatement, Torts 2d: "Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably dangerous* * * * [M]edical experience * * * justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use".

Other States have held that the sufficiency of a manufacturer's warning for a prescription drug is generally a question of fact for the jury (see, e.g., *Love v Wolf,* 225 Cal App 2d 378; *Smith v Squibb & Sons,* 69 Mich App 375, affd 405 Mich 79). However, where the warning given to the prescribing physician by the manufacturer through the Physician's Desk Reference, package inserts and other literature gives specific de-

tailed information on the risks of the drug, the manufacturer has been held absolved from liability as a matter of law *(Magee v Wyeth Labs., supra; Carter v Metropolitan Dade County,* 253 So 2d 920 [Fla], cert den 263 So 2d 584; *Nolan v Dillon,* 261 Md 516). Recently the Second Department considered a case similar to the one before us and concluded that there was a question of fact *(Baker v St. Agnes Hosp.,* 70 AD2d 400). We consider *Baker* distinguishable since in that case the warnings were furnished at one time in the Physician's Desk Reference and then later discontinued. In the instant case not only were the warnings fully descriptive and complete, but they were communicated to the prescribing physician who also happens to be the plaintiff user, Dr. Wolfgruber.

We see no reason why New York's well-established rule governing the field of products liability should not apply with equal effect to the marketing for public consumption of prescription drugs. The Court of Appeals has set forth consistently adhered-to guidelines in the area of products liability for the marketing of a product. Liability will not be found unless: (1) the product is "defective" because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care *(Codling v Paglia,* 32 NY2d 330, 342; *Velez v Craine & Clark Lbr. Corp.,* 33 NY2d 117; see *Bolm v Triumph Corp.,* 71 AD2d 429; *Biss v Tenneco, Inc.,* 64 AD2d 204). Regardless of the descriptive terminology used to denominate the cause of action (viz., "strict liability" or "negligence"), where the theory of liability is failure to warn, negligence and strict liability are equivalent *(Bolm v Triumph, supra; Biss v Tenneco, Inc., supra; Rainbow v Elia Bldg. Co.,* 49 AD2d 250). Under this formulation plaintiff clearly cannot establish a basis to impose liability upon defendant.

Accordingly, even though summary judgment or dismissal is uncommon in a negligence suit, on the facts of this case defendant's motion should have been granted. The warning given was adequate by any standard and the plaintiff as a doctor knew the risks of taking this particular drug whose side effects were those specifically warned against as fully as

defendant was able. Where there are admissions, as here, which remove any fact issue, no warrant exists to deny defendant's motion for summary judgment (Siegel, New York Practice, § 280). For us to hold otherwise would serve only to resurrect the discredited doctrine that the defendant manufacturer is an insurer of plaintiff's safety *(Micallef v Miehle Co., Div. of Miehle-Goss Dexter,* 39 NY2d 376, 386; *Biss v Tenneco, Inc.,* 64 AD2d 204, *supra;* Restatement, Torts 2d, § 402 A, comment *k).*

The order should be reversed and defendant's motion for summary judgment should be granted.

SIMONS, HANCOCK, JR., DOERR and MOULE, JJ., concur.

Order unanimously reversed, without costs, motion granted and complaint dismissed.