Jasen, J.
(dissenting). The court today has fashioned a remedy for a person injured due to an allegedly defectively designed product against a corporation acquiring the assets of the manufacturer of the product on the theory of negligence by imposing upon the successor corporation an independent duty to warn based upon a “special relationship”. Inasmuch as I do not believe that the plaintiff has established any cause of action against the successor corporation, even under common-law negligence principles, I must respectfully dissent.
I do, however, agree with the majority that none of the four exceptions to the general rule that a corporation acquiring the assets of another does not acquire the tort *250 liability of the predecessor corporation are applicable in this case. (At pp 242-243, 245; Hartford Acc. & Ind. Co. v Canron, Inc., 43 NY2d 823; Leannais v Cincinnati, Inc., 565 F2d 437, 439.) Similarly, on the facts as presented, I agree that there is no basis for adopting either the continuation of enterprise theory (at pp 243, 245; Turner v Bituminous Cas. Co., 397 Mich 406; Travis v Harris Corp., 565 F2d 443, 446-447; Tucker v Paxson Mach. Co., 645 F2d 620, 625-626) or the products line exception to impute liability to Logemann as a successor corporation (at pp 242-243, 245-246; Ray v Alad Corp., 19 Cal 3d 22; Leannais v Cincinnati Inc., supra, at p 440; Tucker v Paxson Mach. Co., supra, at pp 624-625; Phillips, Products Liability of Successor Corporations: A Corporate and Commercial Law Perspective, 11 Hofstra L Rev 249.)
While I am also in agreement with the majority that “[u]nder general tort rules, a person may be negligent because he or she fails to warn another of known dangers or, in some cases, of those dangers which he had reason to know” (at p 246), I do not believe the rule should be applied to this case where the plaintiff has failed to allege, as required under general tort principles, that the alleged breach of duty to warn was the proximate cause of his injury. Under general tort law, it is necessary to allege and establish all the elements of a cause of action sounding in negligence — that is, that the defendant owed the plaintiff a duty which it breached and that that breach was the proximate cause of plaintiff’s injury. (Dillard & Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va L Rev 145.)
First, I address the majority’s imposition of a duty to warn of the dangers inherent in the shearing machine involved in this case on defendant Logemann because of what it terms a special relationship. While the majority concludes that the “plaintiff will be required to establish that a duty to warn existed. based upon these contacts between defendant Logemann and plaintiff’s employer” (at p 249), the factors cited also relate to the relationship between the successor and predecessor corporation. (Leannais v Cincinnati, Inc., supra, at p 442; Note, Products Liability: Successor Corporations: Liability for Defective Products, 35 Okla L Rev 846, 857.) An inquiry based on *251 those factors appears to question whether there was a de facto assumption of the predecessor’s liability by the successor corporation. Two factors are key: (1) whether there was an actual succession to the predecessor’s service contracts, including questioning whether service was done on the machine in question; and (2) whether the successor corporation knew of the design defect and the location and ownership of the machine. (Tucker v Paxson Mach. Co., 645 F2d 620, 626, supra.) The latter is particularly pertinent to the question of duty because, in the words of the Federal courts which have developed this theory: “Absent knowledge of defects, nothing is known to warn against.” (Travis v Harris Corp., 565 F2d 443, 449, supra.)
I recognize that the majority also states that liability is to be imposed only because of the relationship between Logemann and Wallace Steel (plaintiff’s employer) and not on the basis of any successor theory or “because it [Logemann] acted as a serviceman or repairman for the machine.” (At p 249.) But if in fact neither theory will serve to establish the special relationship necessary to impose a duty on Logemann, I fail to perceive what basis there is for creating this special relationship, especially in this case where Logemann’s only direct contact with Wallace Steel was one service call.
The majority’s emphasis on service contracts I find all the more troublesome because Logemann is claimed to have negligently carried out its duty to warn of a design defect. A relationship established by a service contract would, I believe, more properly impose liability for detecting and warning of a manufacturing defect which might be detected during service work. To impose liability for detecting and warning of design defects may well have the effect of imposing a greater liability on a serviceman, whose knowledge and familiarity with the product is much more limited, than on the manufacturer which designed the machine and in the course of re-evaluating and improving its product line is more likely to become aware of defects and methods to improve or correct them. To impose a continuing duty to warn on the manufacturer is consistent with the theory behind strict products liability of imposing liability on the party which is most capable of *252 correcting the defect and is in a position to keep defective products off the market. Imposing a duty to «warn based on negligence on a party in Logemann’s position, on the other hand, will not make the manufacturer more responsible or keep defective products off the market. Instead, it will put those who service machines under a continuing duty to warn of defects which may only be learned of through extensive and continuing studies in the current state of the art in any industry in which it services products produced by that industry. There is no rationale for imposing a duty to become and remain aware of all the technical developments in a given industry merely because one has assumed the responsibility of servicing another’s product. (Bichler v Willing, 58 AD2d 331; Restatement, Torts 2d, § 402A, Comment j.)
The majority appears to hold that a special relationship may exist on the basis of public sentiment or social policy. (At p 247, citing Prosser, Torts [4th edj, § 56, p 339.) I assume that the majority is reacting to its perception of public sentiment or out of concerns of social policy, apparently on a theory that parties like Logemann derive significant benefit from their economic relationship with companies like Wallace Steel which justifies imposing liability. I cannot agree with this for two reasons. First, as to social policy, I assume the concern would be that the plaintiff may be left completely without a remedy if the successor corporation is not liable under some theory. (Ray v Alad Corp., 19 Cal 3d 22, supra.) That reasoning I find unpersuasive in this case because plaintiff as an employee injured while performing his job is clearly eligible for workers’ compensation benefits, as well as any benefits from accident, health and disability insurance policies which may be available to compensate him for his injury. In addition, plaintiff’s claims against the manufacturer of the machine involved, Richards Shear, which sound in both strict products liability and negligence, remain pending and will provide plaintiff recourse regardless of the disposition of this appeal.
Secondly, I find it unreasonable because the clear implication of this decision is that any economic relationship will be sufficient to impose liability, rather than a signifi *253 cant economic relationship. Certainly a mere economic exchange would be insufficient to establish a special relationship; otherwise all vendors and patrons could be said to have a special relationship. Indeed, the very words “special relationship” indicate that a unique situation of economic interrelation must exist before a special relationship will arise. As noted in Gee v Tenneco, Inc. (615 F2d 857, 866), “[t]he rationale of these decisions is consistent with a benefit/burden analysis, and also imposes a burden which the manufacturer can realistically bear.” So, too, before the burden should be placed on one in Logemann’s position, a substantial showing of benefit should be required. Thus, in deciding whether a special relationship exists on the basis of an economic interrelation, courts have so held only in situations evidencing an on-going relationship which was of both immediate and potentially greater future economic advantage to the party which would be held liable. (Compare Leannais v Cincinnati, Inc., 565 F2d 437, supra, with Tucker v Paxson Mach. Co., 645 F2d 620, supra.)
Accepting arguendo the concept of a special relationship, I do not believe the facts as alleged support the conclusion that a special relationship existed in this case. The affidavits indicate at best an extremely limited relationship between Logemann and the plaintiff. On two occasions, Logemann wrote to plaintiff’s employer, Wallace Steel, soliciting any service work on Richards Shear produced equipment. There was only one actual service call by Logemann and that was not related to the cutting device involved in this lawsuit, but to repairs on the power unit of the hydraulic shears. Unlike the situation in Leannais v Cincinnati, Inc. (supra), there was no assumption of service obligations by Logemann and no indication that the knowledge Logemann had of where Richards Shear’s former customers were and the age of any customers’ machinery had or would, in any way, aid Logemann in obtaining future business. This is especially so because Logemann never undertook to produce machines in the Richards Shear line and there is no indication that any inventory of this type of machine was turned over pursuant to the agreement between Logemann and Richards Shear. I find it difficult to agree that such limited contact is sufficient, *254 as a matter of law, to establish a special relationship based on economic interrelation. Even assuming that Logemann should incur some liability for its failure to warn, certainly the liability imposed under a negligence cause of action should be no greater than that which would have been imposed on the original manufacturer.
At common law, the duty to warn reached only to hidden dangers or because the product was inherently dangerous in a way which would likely remain undetected by the consumer. On the other hand, if the danger was generally known or obvious to an observer, there was no duty to warn imposed at common law. (Rosebrock v General Elec. Co., 236 NY 227, 238; Thomas v Winchester, 6 NY 397; Ann., 76 ALR2d 9, § 9, pp 28-37.)
This basic rule was incorporated in section 388 of the Restatement of Torts, Second. The rule as stated by the Appellate Division in Young v Elmira Tr. Mix (52 AD2d 202, 204-205) is that “a supplier is subject to liability where the supplier has reason to know that the product he furnishes is likely to be dangerous for the use for which it is supplied; has no reason to believe the user will realize its dangerous condition; and fails to exercise reasonable care to inform the user of the facts which make the product likely to be dangerous.”
Comment k under section 388 of the Restatement further clarifies this rule by stating that the duty to warn exists “only if [the supplier] has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose” unless the supplier has reason to believe that even a casual observation will not be made or that special expertise would be required to perceive the danger. As even the majority described the failure to include a safety guard on this machine was an “open and notorious” danger, I believe this is a case in which the court could properly conclude, as a matter of law, that there was no duty to warn. (Lancaster Silo & Block Co. v Northern Propane Gas Co., 75 AD2d 55, 65.)
*255 Indeed, causes of action for failure to warn are so similar, whether sounding in negligence or strict products, one Appellate Division court held that liability even under strict products would not exist unless the plaintiff would not have discovered the defect and apprehended its danger. (Wolfgruber v Upjohn Co., 72 AD2d 59, affd 52 NY2d 768, citing Codling v Paglia, 32 NY2d 330.)
Moreover, it is precisely because the cause of action being recognized is failure to warn that the majority’s reliance on the abandonment by this court of the latent and patent defect distinction is misplaced. Micallef v Miehle Co., Div. of Miehle-Goss Dexter (39 NY2d 376) addresses itself to the manufacturer’s duty to design a reasonably safe machine. (Supra, at pp 385-386.) Because the issue in a design defect case is whether the “product, as designed, was not reasonably safe” (Voss v Black & Decker Mfg. Co., 59 NY2d 102), the distinction between latent and patent defects was no longer viable once strict products liability was recognized as a cause of action in this State.
So, too, the advent of comparative negligence, still a valid concern even under strict products liability, eroded the rationale behind latent and patent defects because even if the plaintiff could be found to have been aware of the risk and assumed it or to have caused in part his injury by his misuse of the product, recovery against the manufacturer would not be barred. (Micallef v Miehle Co., Div. of Miehle-Goss Dexter, supra, at p 384.)
Duty to warn, on the other hand, is imposed in order to provide some protection when a product must remain dangerous in order to retain its utility. The function of the warning is to make the product reasonably safe by alerting the user to the inherent danger of the product or the danger in misuse of the product. To say that there is no duty to warn when the defect is obvious does not conflict with the obligation imposed by Codling v Paglia (32 NY2d 330, supra) on the manufacturer “to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended * * * as well as an unintended yet *256 reasonably foreseeable use”. (Micallef v Miehle Co., Div. of Miehle-Goss Dexter, 39 NY2d 376, 385-386 supra [citations omitted].) The duty to warn being conceptually different from the duty to properly design or manufacture a product, it does not necessarily follow that the elimination of the latent and patent defect distinction for causes of action based on negligent design or manufacture imposes a duty to warn when a defect is obvious, as I believe recent decisions have held. (Wolfgruber v Upjohn Co., 72 AD2d 59, affd 52 NY2d 768, supra.) This is all the more so when the cause of action alleged is negligence, rather than strict products liability.
Even if it were to be assumed that the alleged facts did justify finding a special relationship between the plaintiff and defendant Logemann and that the defect was not so open and notorious so as to negate the duty to warn, I would still be compelled to disagree with my colleagues because, as stated before, I do not believe proximate cause, another necessary element to establish liability under the common-law theory of a duty to warn, has been pleaded or could be established. (Ann., 76 ALR2d 9, at pp 66-72.) Liability at common law was imposed for failure to warn about an inherently dangerous product or of hidden dangers on the theory that this was the only means of making a dangerous product safe. (Ann., 76 ALR2d 9.) Once the manufacturer had issued the warning properly, he would no longer be considered negligent and was thus relieved of liability. If those to whom the warning was given failed to heed it, their failure would likely constitute a supervening cause because it was not considered reasonably foreseeable that the warnings once given would be ignored. (McLaughlin v Mine Safety Appliances Co., 11 NY2d 62, 68-71; Sider v General Elec. Co., 203 App Div 443, 448-450, affd 238 NY 64.)
Similarly, it has been held that a manufacturer and retailer’s liability for failure to label dangerous substances might be excused if it was established that the party in a position to avoid the injury was already privy to the knowledge the warnings would have conveyed. (Howard Stores Corp. v Pope, 1 NY2d 110, 115.) The clear implication of that holding is that to establish liability under a *257 negligent failure to warn theory, proximate cause must link the failure to warn with the injury — that is to say, that the injury must be caused because the plaintiff was not warned of the product’s dangers or defects. (De Vito v United Air Lines, 98 F Supp 88.) Thus, in this case, where the open and notorious nature of the danger would undoubtedly become apparent in over 10 years of operating the machine, I fail to understand how the breach of the duty to warn could be the proximate cause of the injury, assuming that the duty to warn could have been established in the first instance.
Undoubtedly, and understandably, strict products liability was formulated to reduce the burden the plaintiff bore in establishing either duty or proximate cause in any negligence based case and thereby to make those who could correct the negligence responsible to do so or bear the costs. Simply because strict products liability does not afford every plaintiff a remedy does not justify the reshaping of long-standing reasonable negligence concepts, as I believe the majority appears to be doing here. Accordingly, I would affirm the order of the Appellate Division.