**Paula FANE and Kjell Fane,
Plaintiffs–Appellants,**

v.

**ZIMMER, INC., Defendant–Appellee.**

No. 528, Docket 90–7417.

United States Court of Appeals,
Second Circuit.

Argued Oct. 26, 1990.

Decided March 8, 1991.

Denise L. Hummel, Tarrytown, N.Y. (Pirrotti & Hummel, Tarrytown, N.Y., of counsel), for plaintiffs-appellants.

Thomas M. Hirschen, Schenectady, N.Y. (Friedman, Hirschen, Miller & Coughlin, Schenectady, N.Y., of counsel), for defendant-appellee.

Before MESKILL and ALTIMARI, Circuit Judges, and DORSEY,* District Judge.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Northern District of New York, Foley, J., granting a directed verdict in favor of the defendant-appellee, Zimmer, Inc. (Zimmer), thereby dismissing plaintiffs-appellants Paula and Kjell Fane's products liability and negligence action. The judge directed a verdict for Zimmer after both sides had presented their cases but before the action was submitted to the jury.

Paula and Kjell Fane appeal from the directed verdict asserting that the district court improperly usurped the jury's traditional functions of making credibility determinations and weighing the evidence. The Fanes also claim that the district court substituted its judgment for the jury's in deciding the adequacy of the product's warnings and Zimmer's tests on the product, in finding no negligent misrepresentation and in failing to assess punitive damages against Zimmer. Finally, the Fanes aver that proof of proximate cause did not require medical expert testimony.

We affirm the judgment of the district court.

* Honorable Peter C. Dorsey, United States District Judge for the District of Connecticut, sitting by designation.

## BACKGROUND

On August 18, 1987, Mr. and Mrs. Fane filed suit against Zimmer in the Supreme Court of the State of New York, County of Delaware asserting claims of negligent failure to warn, strict products liability for design defect and loss of consortium arising out of the physical injury to Paula Fane. Mrs. Fane was injured when a device, manufactured by Zimmer and implanted in her hip, failed. Zimmer removed the case to the United States District Court for the Northern District of New York on the basis of diversity of citizenship.

Trial was held from March 21 to March 29, 1990 before Judge Foley. The following summarizes the relevant testimony given.

### Fanes' Case

The ensuing chronology is derived from evidence introduced by the Fanes.

This action arises out of the third of a series of hospitalizations of Paula Fane. In 1973 Paula Fane suffered a fractured left hip as a result of an automobile accident. After recovery her left hip began bothering her again and, in 1982, she began seeing Dr. Elting for the pain. Dr. Elting, at that time, noticed arthritic trauma to Mrs. Fane's left hip and recommended surgery. Dr. Elting intended to change the angle of the ball in the socket of Mrs. Fane's hip and to stop the wear on the hip that could be seen in x-rays. Surgery was performed in January of 1983 at which time the femur was broken below the hip and a wedge of bone was removed to change the angle of the top of the femur. At that time Dr. Elting implanted in Mrs. Fane's hip and leg a device, generically known as an internal fixation device, to hold the pieces of the bone together to facilitate healing. Healing was expected to take several months. Because the surgery had created a length disparity in Mrs. Fane's legs, making the left leg shorter than the right, Dr. Elting again performed surgery on Paula Fane's left hip on June 16, 1983. In an attempt to lengthen the left femur, he intentionally fractured the femur in two places and inserted pieces of bone from Mrs. Fane's pelvis between the ends of the femur. Dr. Elting implanted another internal fixation device to affix the bone pieces.

On July 30, 1984, Dr. Elting again performed surgery on Paula Fane. He testified that the purpose of this surgery was to insert a bone graft in her hip to further lengthen her leg and to correct the disparity that had existed since the January 1983 surgery. This surgery also involved an intentional refracture of the bone to permit insertion of the graft. Dr. Elting removed the device from Paula Fane's hip and implanted a new internal fixation device, the key-free compression tube and ETC side plate (key-free device). This device, manufactured by Zimmer, is the focus of this litigation. The key-free device had eight screw holes, through which screws were implanted in the femur. The key-free device was 156 mm in length, and the top portion was slanted at an angle of 140 degrees. Dr. Elting testified that the only purpose for which he implanted the key-free device was to hold the bone fragments, including the graft, together during healing.

Although Dr. Elting did not recall if he had read the package inserts sent with the key-free device, he was familiar with the risks associated with the use of the key-free device, and stated that the risks were well known. He admitted that breakage of the side plate in the key-free device is a known medical complication if the bone does not heal and become solid. Dr. Elting did not know if he conveyed information about the risks affiliated with the key-free device to Mrs. Fane. He had been using that type of device for five or six years to treat a variety of fractures, bone cuts and defects. The key-free device, he felt, had a good reputation in the medical community for safety and efficacy. In fact, Dr. Elting had implanted a device very similar to the key-free device in Mrs. Fane during her operation of June 1983.

Dr. Elting supervised Mrs. Fane's subsequent treatment. During her course of recovery from the surgery and therapy, Mrs. Fane gradually began to bear weight on her left leg and hip pursuant to the

instructions of Dr. Elting. She was bearing full weight on the leg with no crutches or other external support by March or April of 1985. An x-ray taken on December 5, 1985, while the key-free device was still in place, showed what appeared to be a healing of the fracture. Dr. Elting then set a date for surgery to remove the key-free device and perform another leg lengthening operation.

On December 29, 1985, Paula Fane began suffering from pain in her left thigh which caused her to seek emergency medical assistance. The hospital gave her pain killers and discharged Mrs. Fane that day. Mrs. Fane was readmitted to the hospital on December 31, 1985. An x-ray taken on January 1, 1986 revealed a fracture in her left femur and a fracture of the key-free device at the site of the break in her femur. The key-free device apparently broke at the top of one of the screw holes; the screw fitting in that hole also broke. Shortly thereafter, Mrs. Fane underwent surgery to remove the broken key-free device on January 7, 1986. During this surgical procedure, Dr. Elting implanted another internal fixation device. This device possessed ten screw holes and measured one and one quarter inches longer than the broken key-free device. Mrs. Fane remained in the hospital until January 21, 1986. She was subsequently readmitted on January 27, 1986 for dehydration that had occurred prior to her discharge the week before and was again discharged on January 29, 1986.

In early October 1987, Paula Fane entered the hospital for removal of the ten hole device. At that time she also underwent a total hip replacement, surgery accelerated, Mrs. Fane contends, because of the damage sustained from the break of the key-free device and refracture of the femur.

Dr. Elting testified that, in 1987, he wrote a letter to plaintiffs' attorney explaining that in 1985 Mrs. Fane's femur had not healed sufficiently to prevent a refracture, contrary to the appearance presented by the December 5, 1985 x-ray.

Jerrold Steinberg, a metallurgist, testified as the Fanes' expert. Steinberg testified that the key-free device broke from stress. He also stated that the device did not have the structural integrity to survive full weight bearing, the alleged purpose for which the key-free device was used and promoted to be used. Applying the scientific tenet that "nature abhors coincidence," the metallurgist concluded that, because the metal was fatigued and metal does not have the ability to repair itself, the key-free device broke first and was a substantial factor in causing the bone fracture.

## Zimmer's Case

Zimmer representative Jerry Lee Lower admitted that Zimmer did not design the key-free device or test its design. Lower testified that the alloy used in the key-free device conformed with standards set forth by the American Society of Testing Materials. Additionally, he stated that the metal forging used to produce the key-free device was tested in a number of similar devices for functionability and safety. A Zimmer internal memorandum indicated that the key-free device was not designed for full weight bearing, but rather was made to hold two segments of a fracture together during the healing process. A letter from the designer of the key-free device, Dr. Southwick, reiterated this position and stated that external support should be required for unstable fractures. The Zimmer promotional material contained numerous statements that the Zimmer device promotes or facilitates early weight bearing, but also revealed that the device was not intended for full weight bearing, nor was it suitable for such use. The package insert and promotional material contained warnings of the risks associated with use of the key-free device, including the particular risk of breakage in active patients. Zimmer's expert witness, Dr. Heineman, testified that the key-free device broke because it, and not the bone, was bearing most of the weight and stress.

After presentation of all the evidence, Judge Foley granted a directed verdict in favor of Zimmer on Zimmer's motion. Judge Foley explained that the plaintiffs, on the failure to warn issue, had failed to overcome the evidence produced by the de-

fendant, Zimmer, and cited *Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87 (2d Cir.1980). The court went on to state that all claims were dismissed because the plaintiffs failed to meet their burden of proof. Paula and Kjell Fane appeal claiming the district court erroneously granted the directed verdict.

## DISCUSSION

■ In reviewing a grant of a directed verdict, we must resolve all issues of credibility in favor of the appellant. *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943); *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 956 (2d Cir.1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). A directed verdict is proper only if the evidence points so strongly in favor of one party that a reasonable jury could reach but one conclusion, in favor of that party. *National Auto Brokers*, 572 F.2d at 956. If the evidence presented raises a question such that reasonable men might reach different conclusions, a directed verdict is improper. *Id.* It should be noted, however, that "[a] mere scintilla of evidence is insufficient to present a question for the jury." *Id.* (quoting *Epoch Producing Corp. v. Killiam Shows, Inc.*, 522 F.2d 737, 743 (2d Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969))).

The Fanes claim they succeeded in proving the elements of both strict products liability and negligence. We consider their arguments as to each cause of action individually.

■ In a strict products liability action a plaintiff may assert that the product is defective because of a mistake in manufacturing, because of improper design, or be-

cause of the manufacturer's failure to provide adequate warnings regarding use of the product. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983). The Fanes did not allege a mistake in manufacturing, but did claim the other two forms of defect.

■ Strict liability requires proof that (1) the product is "defective" because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care. *Wolfgruber v. Upjohn Co.*, 72 A.D.2d 59, 62, 423 N.Y.S.2d 95, 97 (4th Dep't 1979), *aff'd*, 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980). When a design defect is asserted, the focus is on whether the product, as designed, was not reasonably safe or presented an unreasonable risk of harm to the user. *Voss*, 59 N.Y.2d at 107, 463 N.Y.S.2d at 401–02, 450 N.E.2d at 207–08. More specifically, the standard is whether, "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Id.* at 108, 463 N.Y.S.2d at 402, 450 N.E.2d at 208. The plaintiff bears the burden of presenting evidence that the product, as designed, presented a substantial likelihood of harm and feasibly could have been designed more safely.[1] *Id.* at 108, 463 N.Y.S.2d at 402, 450 N.E.2d at 208. Inadequate warnings alone are enough to make a product unsafe. *Baker v. St. Agnes Hospital*, 70 A.D.2d 400, 405, 421 N.Y.S.2d 81, 85 (2d Dep't 1979).

---

**1.** In this action plaintiffs Paula and Kjell Fane have made no attempt to prove the key-free device could have been designed more safely. Instead, the Fanes focused on the sufficiency of the warnings issued by Zimmer and the lack of testing of the specific device involved.

The Fanes use the lack of testing to show that Zimmer acted unreasonably. No such burden

rests on the Fanes in proving the strict liability portion of their complaint; reasonableness is not implicated until the discussion of negligent design. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107, 463 N.Y.S.2d 398, 401–02, 450 N.E.2d 204, 207–08 (1983).

■ We must first determine what is the normal purpose of the key-free device. The evidence does not support a finding that the key-free device was intended or represented to be a full weight bearing instrument. There was evidence that the key-free device was designed to facilitate early weight bearing, but none indicating that the key-free device was designed for bearing a patient's full weight.

Mr. Lower, the Zimmer representative, testified that the purpose of the device was to hold pieces of bone together for healing. The information provided in the package insert of the key-free device was consistent with this limited purpose. Specific warnings were included on the packaging, indicating the risks associated with use of the key-free device and the possibility of breakage or bending of the key-free device when used without external support. Thus, the intended use was clearly limited to holding the bone together for healing with the use of external support. Even Dr. Elting asserted that the key-free device's only purpose was to hold the pieces of bone in place to promote healing. Given the uncontradicted testimony of Dr. Elting that despite the appearance of healing in the December 5, 1985 x-ray, the bone was not sufficiently healed, and the fact that Mrs. Fane had not used external support since April of 1985, the only conclusion a factfinder could have reached is that Mrs. Fane was not using the key-free device in conformity with the intended use.

■ The Fanes claim that the warnings on the package insert were inconsistent with the representations contained in the insert and other material provided by Zimmer and that Paula Fane's activities were consistent with the representations. These claims are not supported by any evidence. Zimmer represents that the key-free device allows "early weight-bearing." Zimmer does not, in the promotional literature, immediately explain what is meant by the term, specifically whether Zimmer is referring to full weight bearing or weight bearing with the use of external supports. However, the warnings provided by Zimmer, as noted above, make it clear that external support should be used for weight bearing, particularly in those instances involving unstable fractures such as that sustained by Mrs. Fane. Thus, the warnings clearly limited any representations made by Zimmer to weight bearing with the use of external support. We must now determine whether those warnings issued by Zimmer were adequate.

■ In this action, the key-free device is not available to the public, but rather is available only by prescription and thus, pursuant to 21 C.F.R. § 801.109, information is disseminated to physicians and the medical community rather than to the patient directly. Warnings are furnished to the medical community as the "'informed intermediary' between the manufacturer and the patient." *Lindsay*, 637 F.2d at 91; *Wolfgruber*, 72 A.D.2d at 61, 423 N.Y.S.2d at 96. "[T]he physician's function is to evaluate a patient's needs, assess the risks and benefits of available [products] and then prescribe a [product], advising the patient of its risks and possible side effects." *Wolfgruber*, 72 A.D.2d at 61, 423 N.Y.S.2d at 96. "Thus, the manufacturer's liability, if any, is directly related to the adequacy of the warning provided." *Id.* at 61, 423 N.Y. S.2d at 96. If the doctor is sufficiently warned, the product is not defective. *Lindsay*, 637 F.2d at 91.

As the *Wolfgruber* Court stated:

[Several] states have held that the sufficiency of a manufacturer's warning for a prescription drug [or device] is generally a question of fact for the jury. However, where the warning given to the prescribing physician by the manufacturer through ... package inserts and other literature gives specific detailed information on the risks of the [product], the manufacturer has been held absolved from liability as a matter of law.

*Wolfgruber*, 72 A.D.2d at 61–62, 423 N.Y. S.2d at 97 (citations omitted).[2]

**2.** *But see Baker v. St. Agnes Hospital*, 70 A.D.2d 400, 421 N.Y.S.2d 81 (2d Dep't 1979) (manufacturer may be liable where warnings of risks of drug's use were printed in Physician's Desk Reference then discontinued; physicians often did not get manufacturer's package inserts contain-

In this action, the device was selected and prescribed by Dr. Elting, purchased by the hospital and prepared for implantation by the hospital. The breakage of the key-free device implanted in an active patient using no external support presented exactly the type of risk of breakage discussed in the Zimmer promotional material and package insert. The warnings also described the type of risk of which Dr. Elting was aware. Furthermore, the evidence indicated that Dr. Elting was aware of the degree of risk represented by use of the key-free device; he was not surprised to learn of two instances of breakage of the device. Because the warnings provided specific information on the risks associated with use of the key-free device and Dr. Elting was fully aware of these risks, we hold as a matter of law that the warnings were adequate. Therefore, we conclude that the Fanes have failed to meet their burden of raising a sufficient question of fact concerning the key-free design for the issue to have gone to a jury.

Our holding that the warnings provided by Zimmer to Dr. Elting were adequate as a matter of law with respect to the Fanes' claim in strict products liability also resolves their claim of negligent failure to warn. "Regardless of the descriptive terminology used to denominate the cause of action ... where the theory of liability is failure to warn, negligence and strict liability are equivalent." *Wolfgruber*, 72 A.D.2d at 62, 423 N.Y.S.2d at 97. Thus, a directed verdict in favor of Zimmer on the claim of negligent failure to warn also was appropriate.

 The Fanes also set forth claims of negligent misrepresentation on the part of Zimmer. One of the necessary elements of negligent misrepresentation is reliance.

*Home Mutual Ins. Co. v. Broadway Bank & Trust Co.*, 53 N.Y.2d 568, 578, 444 N.Y. S.2d 436, 440, 428 N.E.2d 842, 846 (1981). In this action, there is no evidence that Mrs. Fane or Dr. Elting relied on the representations of Zimmer in using the device. To the contrary, Dr. Elting expressly stated that he did not rely on Zimmer's representations or promotional material. Mrs. Fane was not aware of the representations made by Zimmer. She never saw the packaging or the insert and did not know what device was used in her leg until the device was removed. There was no evidence that Mrs. Fane had any knowledge about the device prior to or during its implantation in her left hip and thigh. Therefore, any representations made by Zimmer had no impact on the decision by Dr. Elting to insert the Zimmer device or on his instructions to Fane about how to use the leg and hip containing the key-free device after its insertion. Nor did any Zimmer representations affect the conduct of Mrs. Fane while the key-free device was in her left hip. Thus, the Fanes' claim of negligent misrepresentation was properly dismissed.

 The Fanes further allege that Zimmer negligently designed the key-free device by acting unreasonably in failing to test it. "In a negligence action the plaintiff must establish that a manufacturer failed to exercise reasonable care in making his product." *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 62, 427 N.Y.S.2d 1009, 1013 (4th Dep't 1980).[3] This claim also fails. The Fanes had to prove that Zimmer's alleged breach of its duty to act reasonably was a proximate cause of the injury to Paula Fane. They assert that testing would have revealed that the key-free device was not

ing warnings because drugs and inserts were sent to pharmacists).

**3.** Negligence, broadly speaking, is conduct that falls below the standard of what a reasonably prudent person would do under similar circumstances judged at the time of the conduct at issue. *Cohen v. Josam Construction Corp.*, 17 A.D.2d 253, 234 N.Y.S.2d 147 (1st Dep't 1962). "In a design defect case the court is concerned with the balancing of the alternative designs available against the existing risk while taking into account the cost of the proposed alternative." *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 62, 427 N.Y.S.2d 1009, 1014 (4th Dep't 1980). The Fanes, it appears, did not even attempt to meet their burden of proof on this issue; no evidence regarding industry practices or alternative designs was produced. There was no basis for determining what a reasonably prudent person in similar circumstances would have done.

intended or suitable for full weight bearing. Zimmer, however, already knew and disclosed this fact. There is no indication that Zimmer would have acted any differently had it tested the device. The Fanes therefore failed to provide any evidence to support a finding of proximate cause on this theory.

■ There is yet another reason supporting the directed verdict in favor of Zimmer. Paula and Kjell Fane failed to prove direct causation, a requisite element of their causes of action in negligence and strict liability.

The Fanes had to prove that the breakage of the key-free device caused the injuries sustained. The Fanes were unable to do so. They assert that the issue of proximate cause was an appropriate issue for their metallurgist because he could state his expert opinion as to what caused the key-free device to break. They also contend that the issue of causation was a proper one for the jury. Neither argument is persuasive.

> Ordinarily, expert medical opinion evidence, based on suitable hypotheses, is required, when the subject-matter to be inquired about is presumed not to be within common knowledge and experience and when legal inference predominates over statement of fact, to furnish the basis for a determination by a jury of unskilled practice and medical treatment by physicians; but where the matters are within the experience and observation of the ordinary jurymen from which they may draw their own conclusions and the facts are of such a nature as to require no special knowledge or skill, the opinion of experts is unnecessary.

*Meiselman v. Crown Heights Hospital*, 285 N.Y. 389, 396, 34 N.E.2d 367, 370 (1941). In this action, as far as the cause of injury is concerned, the Fanes had to show that the key-free device broke first. The district court properly did not allow the metallurgist to testify to whether the breakage in the device caused the bone fracture, finding it was beyond his area of expertise. Undeniably, the metallurgist was correctly allowed to testify to what may have caused the metal device to break. The metallurgist stated that stress caused the device's breakage.

■ What causes a bone to fracture, however, is a medical question. In many instances, it might be a matter within the experience and observation of the ordinary juryman. This case, however, is different. Mrs. Fane suffered a complex injury. Implantation of the key-free device involved complicated surgery. Additionally, the key-free device implanted in Mrs. Fane was not one with which an ordinary person would come in contact. The issue of causation in such a complicated medical case, therefore, was one beyond the sphere of the ordinary juryman and required expert testimony.

The Fanes rely on *Voss* to support the claim that expert testimony is not required. "Expert testimony with reference to proximate causation is not always required; in this case the jury could have found proximate causation from its consideration of the characteristics of the [product] and plaintiff's description of how the accident happened." *Voss*, 59 N.Y.2d at 110–11, 463 N.Y.S.2d at 403, 450 N.E.2d at 209. *Voss*, though, is distinguishable from this action. Unlike *Voss*, no one observed the accident in this case; and no one knows for sure how it happened. Paula Fane can only testify as to the result, a fractured femur and a broken Zimmer device. Nonexpert witnesses can only theorize as to how the leg was fractured and the device broken. *Voss* is further distinguishable because it involved a situation in which the plaintiff was trying to tie an alleged design defect to an injury. In this instance, before a possible design defect can even be considered, we note that there are two possible causes of Paula Fane's injuries—the broken device or the fracture of her leg. Fane has failed to tie her injuries to the Zimmer device rather than to the refracture of her leg.

Dr. Elting, Mrs. Fane's doctor, did not testify that the device broke first. In fact, Dr. Elting testified that he could not say which occurred first. If Fane's own doctor

felt incapable of making an assessment as to what broke first, it seems clear that the question was beyond the purview of the ordinary person. Absent competent medical expert testimony on the issue of causation, the Fanes could not prove the elements of a cause of action based in strict products liability or negligence.

In view of the above we need not reach the Fanes' appeal from the denial of an assessment of punitive damages against Zimmer.

For the foregoing reasons, the judgment of the district court granting a directed verdict in favor of Zimmer is affirmed.