Sherry MARSHALL, f.k.a. Sherry
Harrington Plaintiff,

v.

SHELDAHL, INC.; Schjeldahl Corpora-
tion; Gloucester Engineering Co.,
Inc.; and Battenfeld Company a.k.a.
Gloucester Engineering Company,
Inc., Defendants.

Sheldahl, Inc. and Schjeldahl
Corporation, Cross-
claimants,

v.

Gloucester Engineering Co., Inc. and
Battenfeld Company a.k.a. Gloucester
Engineering Company, Inc., Cross-de-
fendants.

Sheldahl, Inc. and Schjeldahl
Corporation, Third-party
plaintiff,

v.

Astro–Valcour, Inc. a.k.a. Penneco
Packaging–AVI, Third-party
defendant.

Astro–Valcour, Inc. a.k.a. Penneco
Packaging–AVI, Cross-
claimant,

v.

Sheldahl, Inc., Schjeldahl Corporation,
Gloucester Engineering Co., Inc., and
Battenfeld Company a.k.a. Gloucester
Engineering Company, Inc., Cross-de-
fendants.

No. 97–CV–1742 (LEK/DRH).

United States District Court,
N.D. New York.

July 18, 2001.

Joseph Muia, Jr., Michael Louis Koenig, O'Connell, Aronowitz Law Firm, Albany, NY, for Sherry Marshall.

Kris T, Jackstadt, Robert S. Bruschini, Office of Kris T. Jackstadt, Albany, NY, for Astro-Valcour, Inc.

Latha Raghavan, Ryan, Snallacombe Law Firm, Albany, NY, for Sheldahl, Inc., Schjeldahl Corp.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is a motion for summary judgment by defendants Sheldahl, Inc. and Schjeldahl ("Sheldahl Defendants"). For the following reasons this motion is GRANTED.

### I. BACKGROUND

On November 28, 1994, Plaintiff sustained serious injuries to her left hand while operating a "bubble out bag machine" at her place of employment. The machine, owned by her employer and third party defendant Astro–Valcour, Inc., was manufactured by defendant Schjeldahl Corporation in April of 1964. The machine is designed to manufacture plastic bags using polyethylene film or tubing that is supplied by a continuous rolling mechanism. When operating properly, the supply rolls feed the machine on one end and discharge finished bags at the other end.

On the date in question, Plaintiff was operating the machine but briefly stopped it in order to adjust the size of bags being produced. After splicing a new roll of polyethylene material to the roll currently in the machine, she restarted it. As the material began to pass through the feeder end of the machine, Plaintiff noticed that it began to tear apart. Without turning the machine off, she walked back to its rear and attempted to reattach the moving material as it entered the machine by grasping hold of it. As she did so, her left hand

was drawn between the machine's rollers, resulting in injury to, and eventual amputation of, her index finger.[1]

She commenced the instant suit in 1997, alleging four causes of action against the machine's manufacturers, including negligent manufacture, defective design, failure to warn, and breach of warranty. In their answer, Sheldahl Defendants brought a cross-claim against Gloucester Engineering Co., Inc., asserting product liability, breach of warranty, negligence, breach of contract, and a right to indemnification. Sheldahl Defendants also filed a third party complaint against Plaintiff's employer, alleging negligent training and failure to instruct Plaintiff as to how to properly operate the machine. Sheldahl Defendants have now moved for summary judgment, in part, on the grounds that the machine's design was not defective and that the alleged defects were open and obvious. The Court now addresses this motion.[2]

## II. DISCUSSION

### A. Standard of Review for Summary Judgment

The standard for summary judgment is well-established. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in a light most favorable to the nonmoving party. *See City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon the movant's satisfying that burden, the onus then shifts to the non-moving party to "set forth specific facts showing that there is a genuine

---

**1.** The machine's power was stopped after a co-worker pulled the safety trip cord during the incident. Plaintiff removed her hand from the machine with the assistance of other co-workers.

**2.** Sheldahl Defendants also move to amend their answer, pursuant to Federal Rule of Civil Procedure 15(a), to assert a statute of limitations defense against Plaintiff. Plaintiff, in her memorandum of law, consented to such an amendment and conceded that her breach of warranty claim is barred by the requisite statute of limitations. As a result, the Court grants Sheldahl Defendants' motion to amend their answer to assert a statute of limitations defense against Plaintiff and also grants them summary judgment as to Plaintiff's fourth cause of action, her breach of warranty claim. *See* N.Y. U.C.C. § 2–725 (McKinney 2001); *Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407, 411, 488 N.Y.S.2d 132, 477 N.E.2d 434 (1985) (indicating that a breach of warranty suit must be commenced within four years of the date in which the party charged tenders delivery of the product). Additionally, Plaintiff conceded in her memorandum of law that, because the machine was operating pursuant to the manufacturer's specifications at the time of her injury, it did not contain any manufacturing defects. As such, the Court grants Sheldahl Defendants summary judgment as to Plaintiff's first, second, and third causes of action to the extent that they allege a manufacturing defect. *See Banks v. Makita*, 226 A.D.2d 659, 660, 641 N.Y.S.2d 875 (2d Dep't 1996).

issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but "must set forth specific facts showing that there is a genuine issue of fact for trial." *First Nat'l Bank of Az. v. Cities Serv. Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

**B. Negligence and Strict Product Liability Claims Based Upon Design Defect**

■ Under New York's strict product liability law, a manufacturer is liable to an injured party if:

> (1) the product is "defective" because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have discovered the defect and apprehended its injury; and (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care.

*Urena v. Biro Mfg. Co.,* 114 F.3d 359, 363 (2d Cir.1997) (quoting *Fane v. Zimmer, Inc.,* 927 F.2d 124, 128 (2d Cir.1991) (citing *Wolfgruber v. Upjohn Co.,* 72 A.D.2d 59, 62, 423 N.Y.S.2d 95 (4th Dep't 1979), aff'd. 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980))). When an injured party asserts that a design defect caused the injury, the focus of the Court's inquiry is on whether the product, as designed, was reasonably safe or presented an unreasonable risk of harm to the user. *See Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 107, 463 N.Y.S.2d 398, 450

N.E.2d 204 (1983). Specifically, the standard is whether, "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Id.* at 108, 463 N.Y.S.2d 398, 450 N.E.2d 204. Thus, Plaintiff had the burden of "presenting evidence that the product, as designed, presented a substantial likelihood of harm and feasibly could have been designed more safely." *Fane,* 927 F.2d at 128. At the same time, Plaintiff will not meet this burden by simply averring that the product would have been safe had it contained adequate warnings. *See id.; Baker v. St. Agnes Hosp.,* 70 A.D.2d 400, 405, 421 N.Y.S.2d 81 (2d Dep't 1979).

■ In an effort to overcome Sheldahl Defendants' motion for summary judgment, Plaintiff presents significant evidence from a variety of sources, including regulations from the Occupational Safe and Health Administration ("OSHA"), the Department of Labor for the State of New York, and the American Standards Association indicating that machines like the "Model 108–56S Bubble Out" machine at issue here should contain a hand cover or guard to prevent individuals from inserting their fingers into the machine's rolls as it presses the plastic into bags. Plaintiff's expert, Dr. Herbert Aronson, explained that the space between the draw rolls pulling the plastic into the machine constituted "an inherent motion hazard that is technically referred to as an ingoing nip point extending across the entire length of rolls." According to him, a "nip point" [3] presents a unique hazard to body parts because they may be drawn into the nip point region. As a result, Defendants

3. A nip point is defined by the National Safety Council as a point formed when machine parts rotate in contact with or near each other.

should have incorporated a protective hand guard, safety trip bars, emergency stopping devices, reversing controls, or warnings into their design. Because Defendants did not do this, Plaintiff's expert alleges that the machine was defectively designed.

In response, Sheldahl Defendants' expert, professional engineer Jeffrey Schwalje, testified that the machine was functioning as it was designed on the day of the accident, that the nip point did not need a protective guard since it was located inside the machine, and it was not foreseeable that an operator would place their hand inside the machine while it was in operation. Moreover Sheldahl Defendants' expert testified that the machine did incorporate proper shut-off and emergency shut-off switches which operated as designed by shutting the machine down after Plaintiff's co-worker tripped them while Plaintiff's hand was lodged in the machine.

Putting aside for the moment the issue of whether the "Model 108–56S Bubble Out" machine was defective, the Court notes that Plaintiff's actions alone render her defective design claims deficient. In other words, assuming for arguments sake that the "Model 108–56S Bubble Out" was defective because it failed to contain a hand guard over the "nip point" of the intake section, Plaintiff still, under *Fane* and its progeny, had a duty to both discover and avoid the injury in the exercise of reasonable and ordinary care. *See Fane,* 927 F.2d at 128.

In this Court's view, upon an examination of the photographic and documentary evidence describing the Model "108–56S Bubble Out" machine, the dangers of the plastic conveyer portion of it were so open and obvious that no reasonable person would attempt to reach into it and grab the polyethylene feeder material without first shutting the machine off. In fact, in a case involving the identical machine at issue in this case and an almost identical set of facts, the Magistrate Judge, sitting by stipulation, held succinctly:

> Plaintiff does not claim or demonstrate that it was part of the normal and expected activities of a user of the Sheldahl machine to place their hands in or near the moving belts. While plaintiff is correct in asserting that "reasonableness" is generally a jury question, he neglects to consider the preliminary inquiry. [Plaintiff's] actions were not reasonably foreseeable, such that these events fell within the probability of risks that would lead to the eventual injury and loss. *See Tucci v. Bossert,* 53 A.D.2d 291, 293, 385 N.Y.S.2d 328 (2d Dep't 1976). If [Plaintiff] had exercised *even the slightest degree of care, such as turning off the power to the machine,* he could have avoided his injury.

*Altmonte v. Batenfield of America,* No. CV–96–1226, slip. op. at 13–14 (E.D.N.Y. Sept. 16, 1998) (emphasis added). Because Plaintiff did not satisfy her duty of discovering the danger inherent in sticking her fingers into a moving machine without turning it off, this Court concludes that Sheldahl Defendants are entitled to summary judgment as to Plaintiff's first, second and third causes of action to the extent they allege claims for negligence and product liability as to the machine's alleged defective design and it so granted.[4]

## C. Negligence and Strict Product Liability Claims Based Upon Failure to

4. As to Plaintiff's negligence claim based on defective design, the Court notes that because there is no "valid line of reasoning ... which could possibly lead rational men to the conclusion [of negligence]," it is, like her strict product liability claim, deficient. *See Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.S.2d 507, 517, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980).

### Warn [5]

 Under New York law, Plaintiff may recover in strict product liability if the manufacturer fails to warn consumers of the risks and dangers associated with the use of its product. *See Urena,* 114 F.3d at 365; *see also Rastelli v. Goodyear Tire & Rubber Co.,* 79 N.Y.2d 289, 296, 582 N.Y.S.2d 373, 591 N.E.2d 222 (1992). The duty of a manufacturer to warn consumers of the risks and dangers associated with its product does not require the manufacturer to warn of dangers which are "patently dangerous or pose open and obvious risks." *Burke v. Spartanics Ltd.,* 252 F.3d 131, 137 (2d Cir.2001); *see also Liriano v. Hobart Corp.,* 170 F.3d 264, 268 (2d Cir. 1999); *Hernandez v. Biro Mfg. Co.,* 251 A.D.2d 375, 377, 674 N.Y.S.2d 72 (2d Dep't 1998). Instead a manufacturer has a duty to warn "against latent dangers resulting from *foreseeable uses* of its product of which it knew or should have known." *Liriano v. Hobart Corp.,* 92 N.Y.2d 232, 237, 677 N.Y.S.2d 764, 700 N.E.2d 303 (1998) (emphasis added). In other words, the manufacturer must anticipate those uses of its product that are reasonably foreseeable, and even if those uses are unintended, warn consumers about their danger. *See id.* Moreover, because questions involving the adequacy or lack of warnings generally involve questions of fact, they are not ordinarily susceptible to summary judgment. *See Johnson v. Johnson Chem. Co.,* 183 A.D.2d 64, 69, 588 N.Y.S.2d 607 (2d Dep't 1992).

Thus, the question left open to this Court upon examination of Sheldahl Defendants' motion for summary judgment is whether the manufacturer could have reasonably foreseen that an operator of its machine, either skilled or unskilled, would have attempted to untwist jammed polyethylene material as it entered the machine without turning the machine off. If the manufacturer could have reasonably foreseen that its machine would be used in this manner, then it had a duty to warn operators about the dangers of doing so. At the same time, if "a manufacturer's warning would have been superfluous given an injured party's actual knowledge of the specific hazard that caused the injury," the Court may, as a matter of law, grant summary judgment to Sheldahl Defendants. *Liriano,* 92 N.Y.2d at 241, 677 N.Y.S.2d 764, 700 N.E.2d 303.

To support her position that she did not know about the inherent dangers of placing her fingers inside the machine while it was operating, Plaintiff testified at her deposition that she had received training from her employer indicating that it was part of the normal operating procedure to reach near the "nip point" and fix any problems in that area without shutting the machine down. Although the Court is highly skeptical of any training procedures indicating that employees may safely place body parts into a piece of high powered industrial machinery to correct an intake problem, Plaintiff's offer of evidence, in effect, supports only a claim of negligent training against her employer. Since New York's Workers' Compensation statute bars such a claim, *see generally* N.Y. Workers' Compensation Law § 29 (McKinney 2001), Plaintiff appears to be trying to pin this negligent training claim on the manufacturer. If the Court condoned such a result, not only would it subvert the policies underlying New York's product liability and worker's compensation laws, but it would also neglect the evidence pre-

---

5. Plaintiff's failure to warn claims, although predicated alternatively upon theories of negligence and strict product liability, are essentially equivalent and the Court will treat them as such. *See Wolfgruber,* 72 A.D.2d at 62, 423 N.Y.S.2d 95.

sented indicating that Plaintiff understood the danger of her actions.

Particularly, Plaintiff testified at her deposition that, although she could not remember specific training or safety classes given to her indicating that she should not place her hands in the machine's moving parts, employees were normally trained not to place their fingers in the machine while it was running. Moreover, at the time of the accident she testified that she was trained to utilize the emergency stopping mechanism contained in the machine and located well within her reach. Instead of drawing on this alternative training, she chose to walk past each of the machine's emergency stop switches, the main power switch, and the safety trip wire before reaching into the machine's moving parts to correct the faulty splice.

Given the visibility of each of these safety devices and stopping mechanisms, and the admitted ease of access to them, particularly for Plaintiff, the Court does not see how Sheldahl Defendants could have foreseen that a reasonable person would have chosen to behave as Plaintiff did.[6] In other words, even though there is a factual dispute as to whether the machine contained posted warnings stating "danger, keep hands clear when equipment is running" when Plaintiff suffered her injury, the placement of such a warning would have been superfluous given Plaintiff's understanding that it was "normal" to keep her hands away from the machine's moving parts and the ease with which the machine could have been stopped prior to correcting the splice. *See Altmonte*, slip op. at 11. As a result, Sheldahl Defendants are entitled to summary judgment

on Plaintiff's failure to warn claims and it is so granted.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Sheldahl Defendants' motion for summary judgment is GRANTED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.

---

**6.** Putting aside the reasonable person standard, the Court also fails to understand how Plaintiff, after receiving her GED, working with heavy industrial machinery from 1988–1994, and previously injuring her hand in similar type machines, can assert that it was subjectively reasonable to attempt to repair her initial splice by reaching into the "Bubble–Out" feeder mechanism while it was still operating.