■  HELEN FINKELSTEIN, Appellant, v CHEVRON CHEMICAL COMPANY et al., Respondents.—In an action to recover damages for breach of warranty, plaintiff appeals from a judgment of the Supreme Court, Rockland County, entered February 16, 1977, which is in favor of defendants, upon the trial court's dismissal of the complaint at the close of plaintiff's case, at a jury trial. Judgment affirmed, with costs. Plaintiff, a licensed practical nurse, purchased a container of Ortho Tomato Vegetable Dust from defendant Chestnut Grove Nursery, Inc. The product is an insecticide manufactured and marketed by defendant Chevron Chemical Company. On the morning of July 4, 1969, after reading the instructions found on the label, which included a warning to avoid skin contact, plaintiff used the insecticide for the first time. Although she tried to avoid contact with. the product, a considerable amount of the dust settled on her, especially in the area of her face. Upon completing her gardening, plaintiff returned to her house and showered. Shortly thereafter she became very shaky, wobbly, nauseous and headachy and felt a burning sensation. Those symptoms, which were diagnosed as insecticide poisoning, became progressively worse and ultimately required hospitalization. Plaintiff brought suit for damages against the

defendant nursery and the defendant manufacturer, charging breach of implied warranty under section 2-314 of the Uniform Commercial Code. At the close of plaintiff's case the court granted defendants' motion to dismiss the complaint on the ground that while plaintiff's bill of particulars alleged that certain organic phosphors in Chevron's insecticide were the toxic agents that caused her injuries, she failed to prove the allegation or to establish any specific defect in the product. The court stated: "This is an action in breach of warranty. One of the necessary findings must be that the defect, if any existed, was a substantial factor in bringing about the plaintiff's injury. Here, no defect has been proven." Our review of the record indicates that the trial court correctly dismissed plaintiff's complaint at the close of her case. To establish a claim for breach of an implied warranty, plaintiff was required to show that the product which she used was not reasonably fit for the purposes for which it was intended, and that such product was the proximate cause of her injuries. For the plaintiff to contend that it may be inferred from her use of the product to dust tomato plants, followed by the alleged ill effects suffered by her, that the product is prima facie both defective and the proximate cause of her injuries, is to disregard the standards articulated by the statute (see McKinneys Cons Laws of NY, Book 62½, Uniform Commercial Code, § 2-314, Official Comment No. 13). The complaint in this case alleged: "At the time of the sale Ortho Tomato Vegetable Dust was not suitable and reasonably safe for the purpose for which it was purchased; it contained substances which were toxic and dangerous to humans in its ordinary use". Accordingly, each defendant served a demand for a bill of particulars which sought a description and identification of those ingredients plaintiff alleged were toxic and dangerous to humans. The following responses were given: 1. Response to defendant Chevron: "Upon information and belief, the product contained organic phosphors, chemically related to the nerve agents GB and VX and such other agents as interferred *[sic]* [with] and injured the proper functioning of the central nervous system of the plaintiff." 2. Response to defendant Chestnut Grove: "Organic phosphors in the product cause nerve malfunction, gross tremors, dysfunction of the central nervous system causing disturbance of respiration, salivation, muscle control, walking and ordinary activity." Although plaintiff's bills of particulars specified those ingredients allegedly responsible for her illness, at the trial she failed to prove that the subject product contained organic phosphors, much less prove the harmful nature of such phosphors. Plaintiff's doctor testified that, in his opinion, plaintiff suffered from anticholinesterase poisoning. However, he could not state that any of the ingredients listed on the label of the container could have caused such poisoning; nor did he know what all of the listed ingredients were (see *Zampino v Colgate-Palmolive Co.,* 8 AD2d 304; *Jerry v Borden Co.,* 45 AD2d 344). Plaintiff may have been more successful with her claim had she proceeded under a theory of strict products liability. However due to Statute of Limitations obstacles, plaintiff's recourse was limited to a theory of breach of implied warranty. She failed to prove that the product was not fit for the purposes for which it was ordinarily used, and the complaint was therefore properly dismissed. Gulotta, P. J., Latham, Damiani and O'Connor, JJ., concur.