Brenda **NEALY**, as Administratrix of the Estate of Erica Nealy, Plaintiff,

v.

**UNITED STATES SURGICAL CORPORATION,** Defendant.

**No. 06 Civ. 11390(VM).**

United States District Court, S.D. New York.

Nov. 14, 2008.

Brenda Nealy, New York, NY, pro se.

Patrick A. Hamilton, James E. Berger, Teresa R. Laidacker, Shook Hardy & Bacon, LLP, Kansas City, MO, William Edward Vita, Westerman, Ball, Ederer, Miller & Sharfstein, LLP, Mineola, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Brenda Nealy ("Nealy"), as Administratrix of the Estate of Erica Nealy (the "decedent"), brought this action against United States Surgical Corporation ("U.S. Surgical") in New York State court alleging claims of negligence, strict liability, breach of express warranty, breach of implied warranty, fraudulent misrepresentation, fraudulent concealment, violation of consumer protection statutes, loss of companionship, and wrongful death, as well as a survival claim. These claims are based on the use of a surgical stapler—which allegedly was designed, manufactured, and sold by U.S. Surgical—in a gastric bypass procedure performed on the decedent approximately three weeks before her death. The action was timely removed to federal court pursuant to 28 U.S.C. § 1446(b) on the grounds of this Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

U.S. Surgical now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons discussed below, U.S. Surgical's motion is GRANTED.

## I. BACKGROUND[1]

On August 31, 2004, the decedent underwent a laparoscopic gastric bypass with laparoscopic gastric transection and laparoscopic intestinal anastomosis procedure. Nealy alleges that the decedent suffered a gastrointestinal hemorrhage due to the malfunction of U.S. Surgical's ENDO GIA stapler used in this procedure. The decedent died on September 21, 2004.

## II. LEGAL STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving

---

1. The factual summary below is derived from Nealy's Complaint, dated September 19, 2006 ("Complaint"), and U.S. Surgical's Memorandum of Law in Support of Its Motion for Summary Judgment, dated July 25, 2008 ("Def.'s Mem."). Except as quoted or otherwise cited, no other specific reference to these documents will be made. By Order dated Aug. 25, 2008, the Court granted Nealy an extension of time until October 13, 2008 to respond to U.S. Surgical's instant motion. Having received no opposition from Nealy, the Court decides the motion on the basis of the Complaint and Def.'s Mem., the papers currently on file in the public record.

that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994). The party opposing summary judgment must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact; the opposing party cannot defeat summary judgment by relying on the allegations in the complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996).

▮▮▮ In addition, the Court is mindful that where, as here, a party appears *pro se,* courts are required to broadly construe *pro se* pleadings and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (*quoting Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). The submissions of *pro se* litigants are to be liberally construed. *See, e.g., Burgos,* 14 F.3d at 790. However, that Nealy is proceeding *pro se* "does not relieve [her] of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (internal citations omitted).

### III. *DISCUSSION*

U.S. Surgical moves for summary judgment on the grounds that: (1) medical expert opinion evidence is required to address the issue of whether the surgical stapler used may have been defective, malfunctioned, and caused the decedent a fatal hemorrhage; (2) Nealy has failed to submit any expert evidence as to whether the surgical stapler caused the decedent's fatal hemorrhage; and (3) such causation evidence is required for all of Nealy's claims,

either directly or derivatively. The Court agrees.

### A. *EVIDENCE OF CAUSATION NECESSARY FOR ALL CLAIMS*

Nealy's claims include negligence, strict liability, breach of express warranty, breach of implied warranty, fraudulent misrepresentation, fraudulent concealment, violation of consumer protection statutes, wrongful death, and loss of companionship, as well as a survival claim. Causation is a required element of each of these claims, either directly or, in the cases of the loss of companionship and survival claims, derivatively.

#### 1. *Negligence*

▮▮▮ To state a claim for negligence under New York law, a plaintiff must show: "(1) that the manufacturer owed plaintiff a duty to exercise reasonable care; (2) breach of that duty so that a product is rendered defective, *i.e.,* reasonably certain to be dangerous; (3) that the defect was the proximate cause of the plaintiff's injury; and (4) loss or damage." *Santoro ex rel. Santoro v. Donnelly,* 340 F.Supp.2d 464, 484 (S.D.N.Y.2004) (*citing McCarthy v. Olin Corp.,* 119 F.3d 148, 156 (2d Cir. 1997)). "Causation is an essential element of any negligence claim; if the plaintiff is unable to establish that [her] injuries were proximately caused by the defendant's conduct, summary judgment is proper." *Petitt v. Celebrity Cruises, Inc.,* 153 F.Supp.2d 240, 252 (S.D.N.Y.2001); *see also Schipani v. McLeod,* 541 F.3d 158, 162–63 (2d Cir.2008) ("In order for the defendant to be held liable, the plaintiff must show not only that the defendant was negligent, but also that 'the defendant's negligence was a substantial cause of the events which produced the injury.'" (*quoting Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980))).

### 2. Strict Liability

■■ To state a claim for strict liability under New York law, a plaintiff must show: "(1) the product is 'defective' because it is not reasonably safe as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care." *Fane v. Zimmer, Inc.*, 927 F.2d 124, 128 (2d Cir.1991) (*quoting Wolfgruber v. Upjohn Co.*, 72 A.D.2d 59, 423 N.Y.S.2d 95, 97 (1979), *aff'd*, 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980)); *see also Cosby v. City of White Plains, N.Y.*, No. 04 Civ. 5829, 2007 WL 853203, at *7 (S.D.N.Y. Feb. 9, 2007). "[T]o establish a prima facie case, the plaintiff is required to show that the defectively designed product caused his injury and that the defect was the proximate cause of the injury." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204, 209 (1983); *see also Derienzo v. Trek Bicycle Corp.*, 376 F.Supp.2d 537, 560 (S.D.N.Y. 2005); *Olsovi v. Salon DeBarney*, 118 A.D.2d 839, 500 N.Y.S.2d 325, 326 (1986).

### 3. Breach of Express Warranty

■ A prima facie claim for breach of express warranty requires the plaintiff to "show that there was an 'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase' and that the warranty was relied upon to the plaintiff's detriment." *Tyler v. Kawaguchi, Inc.*, No. 00 Civ. 6366, 2006 WL 581184, at *5 (W.D.N.Y. March 8, 2006) (*quoting Friedman v. Medtronic, Inc.*, 42 A.D.2d 185, 345 N.Y.S.2d 637, 643 (1973)). When a plaintiff brings a claim for breach of express warranty premised upon an allegation that a product was de-

fective, it is the plaintiff's burden to establish causation. *See, e.g., Beckford v. Pantresse, Inc.*, 51 A.D.3d 958, 858 N.Y.S.2d 794, 795 (2008) ("Whether the action is pleaded in strict products liability, breach of warranty, or negligence, the consumer has the burden of showing that a defect in the product was a substantial factor in causing the injury."); *Bloomer v. Empire Forklift, Inc.*, No. 04–3182, 21 Misc.3d 1115(A), 2007 WL 5613616, at *2 (N.Y. Sup.Ct. Ulster Cty. Feb. 26, 2007) (slip copy) (stating that plaintiff's cause of action for breach of express warranty must be dismissed "for the plaintiff's failure to establish any causal connection between the ... incident and his alleged back injuries"), *aff'd*, 46 A.D.3d 1324, 850 N.Y.S.2d 224 (2007).

### 4. Breach of Implied Warranty

■ A prima facie claim for breach of implied warranty "requires that the plaintiff prove that the product is not 'fit for the ordinary purposes for which such goods are used.'" *Macaluso v. Herman Miller, Inc.*, No. 01 Civ. 11496, 2005 WL 563169, at *4 (S.D.N.Y. March 10, 2005) (*citing Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730, 736 (1995); *Robinson v. Reed–Prentice Div.*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 403 N.E.2d 440, 443 (1980)).

■ As is the case with a claim for breach of express warranty, a claim for breach of implied warranty requires the plaintiff to establish causation. *See, e.g., Clarke v. Helene Curtis, Inc.*, 293 A.D.2d 701, 742 N.Y.S.2d 325, 327 (2002) ("The defendant established its prima facie entitlement to summary judgment by demonstrating that there was no causal relationship between its product and the plaintiff's disease, an essential element of the cause of action to recover damages for breach of implied warranty." (citations omitted)); *Finkelstein v. Chevron Chem. Co.*, 60

A.D.2d 640, 400 N.Y.S.2d 548, 549 (1977); *see also Derienzo*, 376 F.Supp.2d at 551.

### 5. *Fraudulent Misrepresentation and Fraudulent Concealment*

■ To state a claim for fraudulent misrepresentation under New York law, a plaintiff must show: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiffs thereby, (3) the plaintiffs reasonably relied upon the representation, and (4) the plaintiffs suffered damage as a result of their reliance." *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 643 N.Y.S.2d 33, 36 (1996) (*citing Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995)), *reh'g denied*, 232 A.D.2d 968, 656 N.Y.S.2d 857 (1996). A claim for fraudulent concealment requires the same showing as a that for fraudulent misrepresentation, with the additional requirement that the plaintiff must demonstrate that the defendant had a duty to disclose material information. *See Banque Arabe*, 57 F.3d at 153; *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, No. 03 Civ. 3748, 2006 WL 278138, at *6 (S.D.N.Y. Feb. 2, 2006). For both forms of fraud, the element of damage includes a requirement that the plaintiff establish proximate causation. *See, e.g., Hunt v. Enzo Biochem, Inc.*, 471 F.Supp.2d 390, 399–400 (S.D.N.Y. 2006) (stating that a claim of common law fraud under New York law "requires a showing of proximate causation"); *Allied Irish Banks*, 2006 WL 278138, at *9.

### 6. *Deceptive Business Practices*

■ To establish a claim for deceptive business practices pursuant to New York General Business Law § 349, a plaintiff must prove: "(1) a consumer-oriented act or practice (2) that was likely to mislead a reasonable consumer in a material way and (3) that caused injury to the plaintiff." *Deen v. New School Univ.*, No. 05 Civ.

7141, 2007 WL 1032295, at *5 (S.D.N.Y. March 27, 2007) (*citing Stutman v. Chemical Bank*, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 611 (2000)); *see* N.Y. Gen. Bus. Law § 349(a); *see also id.* § 349(h) (creating a private right of action for injured parties). "The causation element is essential: 'The plaintiff ... must show that the defendant's 'material deceptive act' caused the injury.'" *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 310 (S.D.N.Y.2004) (*quoting Stutman*, 709 N.Y.S.2d 892, 731 N.E.2d at 612); *see also Petitt*, 153 F.Supp.2d at 266.

### 7. *Wrongful Death*

■ "To succeed on a cause of action to recover damages for wrongful death, the decedent's personal representative must establish, inter alia, that the defendant's wrongful act, neglect, or default caused the decedent's death." *Eberts v. Makarczuk*, 52 A.D.3d 772, 861 N.Y.S.2d 731, 732 (2008) (*citing Chong v. New York City Transit Auth.*, 83 A.D.2d 546, 441 N.Y.S.2d 24, 25–26 (1981)); *see also Dineen ex rel. Dineen v. Stramka*, 228 F.Supp.2d 447, 454 (S.D.N.Y.2002) ("Plaintiff's wrongful death claim must also be dismissed because he has failed to allege a sufficient causal or proximate nexus between any action by the defendant and the death of [decedent].").

### 8. *Derivative Claims: Loss of Companionship and Survival Action*

■ Under New York law, a claim for loss of companionship, society, services, or support is derivative of the related primary causes of action; dismissal of the primary claims requires the Court to dismiss any dependent derivative claims. *See, e.g., In re Air Crash at Belle Harbor, N.Y. on November 12, 2001*, 508 F.Supp.2d 244, 249 (S.D.N.Y.2007) ("The father's claims [for loss of companionship, comfort, and services of his son] also fail because they are derivative of Morley's underlying

claim, which lacks a basis in law."); *Moore v. Ewing,* 9 A.D.3d 484, 781 N.Y.S.2d 51, 55–56 (2004) ("New York courts ... consider a parent's claim for loss of services and medical expenses associated with a child's injury to be derivative of the child's claim."); *Slobin v. Boasiako,* No. 18143/02, 19 Misc.3d 1110(A), 2008 WL 818940, at *12 (N.Y. Sup.Ct. Nassau Cty. March 8, 2008) (slip opinion) (describing claim for loss of services, society, support, and maintenance as a "derivative claim" that "stand[s] or fall[s] with plaintiff's [underlying] cause of action"); *Diaz ex rel. Clark v. State,* No. 107637, 18 Misc.3d 1108(A), 2004 WL 5496243, at *1 n. 1 (N.Y.Ct.Cl. Oct. 25, 2004) (characterizing parent's claim for "loss of services, aid, comfort and society of her [deceased] daughter" as a derivative claim); *c.f. Jones v. United States,* 720 F.Supp. 355, 369 (S.D.N.Y.1989) ("A claim for loss of consortium is a derivative one, and can only be sustained if defendant is found to have been negligent on the primary claim." (citations omitted)); *Liff v. Schildkrout,* 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288, 1291 (1980); *Paisley v. Coin Device Corp.,* 5 A.D.3d 748, 773 N.Y.S.2d 582, 583 (2004).

■ Similarly, because a survival claim is "essentially a decedent's personal injury lawsuit," *In re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d 831, 851 (2d Cir. 1992), the viability of a survival claim is dependent upon the viability of the underlying personal injury claim. *See Corcoran v. New York Power Auth.,* Nos. 95 Civ. 5357, 95 Civ. 8102, 1997 WL 603739, at *4 (S.D.N.Y. Sept. 29, 1997) (*citing* N.Y. Est. Powers & Trusts Law § 11–3.2(b) (McKinney 1967)). Therefore, if Nealy cannot establish the requisite causation for her personal injury claims, her survival claim must fail as well.

## B. EXPERT OPINION EVIDENCE NECESSARY TO DEMONSTRATE CAUSATION

■ "Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person." *Barnes v. Anderson,* 202 F.3d 150, 159 (2d Cir.1999) (*quoting Shegog v. Zabrecky,* 36 Conn.App. 737, 654 A.2d 771, 776 (1995)); *see also Fane,* 927 F.2d at 131 (holding that New York law required expert medical testimony to attribute a bone fracture to the breakdown of hip implant in order to establish proximate causation on a negligent failure to warn claim); *Gold v. Dalkon Shield Claimants Trust,* No. B–82–383, 1998 WL 351456, at *3 (D.Conn. June 15, 1998) ("Medical evidence relating to causes of injury to the human body is not normally considered to dwell within the common knowledge of a layperson."), *aff'd,* No. 98–9346, 1999 WL 627689 (2d Cir.1999).[2]

In this case, Nealy claims that the decedent's gastrointestinal hemorrhage and subsequent death were caused by the mal-

---

**2.** The Court appreciates the similarities of this case to *Buckley v. General Motors Corp.,* 54 Fed.Appx. 712 (2d Cir.2003) (unpublished opinion), where the district court granted the defendant's motion for summary judgment against a *pro se* plaintiff in a products liability and personal injury action brought in New York state court that was removed to federal court. After vacating and remanding the district court's decision on procedural grounds, the Second Circuit noted that "[i]t would ap-

pear that New York law does not require expert witnesses to prove causation in a products liability action, but permits proximate causation to be established solely on the basis of the jury's 'consideration of the characteristics of the [product] and plaintiff's description of how the accident happened.' " *Id.* at 713 (*quoting Voss,* 463 N.Y.S.2d 398, 450 N.E.2d at 209) (alteration in original). The theory of causation at issue in *Buckley,* however, was mechanical and not medical. *See id.* (plaintiff

function of ENDO GIA staplers used in her gastric bypass procedure—a claim that is indisputably medical in nature and well outside the sphere of a layperson's common knowledge. Therefore, to defeat U.S. Surgical's Rule 56 motion, Nealy must submit expert medical opinion supporting her theory of causation; without such evidence, the Court must grant U.S. Surgical's motion.

## C. *NEALY'S SUBMISSION*

■ Nealy submitted a letter to the Court from Paula F. Stone ("Stone"), a medical consultant, dated September 8, 2008 (the "Stone Letter"). The Stone Letter details the decedent's post-surgery condition and states that the decedent's treating doctors had "departed from the normal standard of care," and had "killed your daughter." (Stone Letter at 2–3.) The Stone Letter makes no mention of the use of ENDO GIA staplers during the procedure, and in particular, does not state that any malfunction or defect in the ENDO GIA staplers used caused the injuries to the decedent. Rather, the Stone Letter places the blame for the decedent's death entirely on the decedent's treating physicians. Nor does the Stone Letter establish that Stone possesses sufficient professional education, training, and experience to qualify as a medical expert in the relevant area. As such, the Stone Letter does not provide the expert medical opinion evidence required for Nealy to sustain her claims against U.S. Surgical.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For each of Nealy's causes of action, causation is an essential element, either directly or derivatively. Because Nealy failed to provide the Court with expert medical testimony demonstrating causation that would sustain her burden of proof as to each of her claims, summary judgment must be granted to U.S. Surgical.

## D. *NEALY'S REQUEST FOR LEAVE TO AMEND HER COMPLAINT*

Nealy's submission of the Stone Letter seems addressed not so much to the instant motion, but in support of Nealy's separate request for leave to amend the Complaint so as to assert malpractice claims against the individual physicians involved in the decedent's surgery. (Letter from Brenda Nealy, dated September 16, 2008 (the "Nealy Letter").) The statute of limitations on such claims expired almost two years ago, N.Y. C.P.L.R. § 214–a (McKinney 2003) ("An action for medical ... malpractice must be commenced within two years and six months of the act ....”), which Nealy concedes. (Nealy Letter at 1.)[3]

---

alleged that a defect in her car's axle caused her car to leave the road and roll over). In contrast, causation of a medical nature generally requires expert medical testimony. *See, e.g., Fane*, 927 F.2d at 131 ("The issue of causation in such a complicated medical case ... was one beyond the sphere of the ordinary juryman and required expert testimony.").

**3.** Applying a liberal reading to the Nealy Letter, to the extent that she indicates she would

amend the Complaint to assert claims sounding in negligence but not involving the provision of medical care itself, the statute of limitations has expired on such claims. *See* N.Y. C.P.L.R. § 214 (McKinney 2003) (three-year statute of limitations for personal injury action); *see also Mylon v. Hackensack Univ. Med. Ctr.*, No. 5:06–CV–268; 2007 WL 778137, at *1 (N.D.N.Y. March 9, 2007) ("Related claims sounding in negligence but not involving the provision of medical care itself

Nealy urges the Court to exercise its equitable powers to toll the statute. A litigant seeking equitable tolling "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (*citing Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)); *see also Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (stating that equitable tolling requires a showing that "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll" and "extraordinary circumstances prevented him from filing his petition on time") (citations omitted). *Pro se* filings, although held to more lenient standards, are not excused from establishing these elements. *See, e.g., Valverde v. Stinson,* 224 F.3d 129 (2d Cir. 2000) (applying general equitable tolling principles against *pro se* litigant); *see also Doe v. Menefee,* 391 F.3d 147, 175 (2d Cir.2004) (holding that "pro se status does not in itself constitute an extraordinary circumstance meriting tolling"). The Court does not find sufficient ground to grant this request so long after the statutory deadline for filing Nealy's proposed claims. Accordingly, her request is DENIED.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 53) of defendant, U.S. Surgical Corporation, for summary judgment is GRANTED.

**ORDERED** that the motion (Docket No. 60) of plaintiff, Brenda Nealy, as Ad-

... are governed by the three-year limitations period generally applicable to personal injury claims."). Over one year has passed since the

ministratrix of the Estate of Erica Nealy, seeking leave to file an amended complaint is DENIED.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

statute of limitations expired on any such claims.