# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| TEAMSTERS LOCAL 237 ) | C.A. No. N04C-11-191 VLM |
| WELFARE FUND, *et. al.*, on behalf of ) | |
| themselves and others similarly situated, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| ASTRAZENECA  PHARMACEUTICALS ) | |
| LP and ZENECA, INC., ) | |
| ) | |
| Defendants ) | |

Submitted: May 18, 2015
Decided: July 8, 2015

*Upon Consideration of Defendants' Motion to Dismiss
Plaintiffs' Second Amended Complaint*,
**GRANTED.**

## OPINION

A. Zachary Naylor, Esquire, Chimicles & Tikellis LLP, Wilmington, DE, Attorney for Plaintiffs.

Michael P. Kelly, Esquire, McCarter & English, LLP, Wilmington, DE, Attorney for Defendants.

**MEDINILLA, J.**

# I.    INTRODUCTION

Plaintiffs, six New York-based health care funds,[1] filed this class action suit in November 2004 against Defendants Astrazeneca Pharmaceuticals, L.P. and Zeneca, Inc. ("Defendants" or "Astrazeneca") alleging consumer fraud, unjust enrichment, and negligent misrepresentation in connection with Astrazeneca's marketing of its prescription heartburn medication, Nexium. Defendants moved to dismiss. This Court stayed the action while parallel litigation involving essentially the same factual allegations was pending in the United States District Court for the District of Delaware ("District Court"). Following a lengthy procedural history in the District Court, the stay was lifted. Now before the Court are Defendants' motions to dismiss Plaintiffs' Second Amended Complaint ("SAC"), or alternatively, to strike certain allegations in the SAC. For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

# II.    FACTS AND PROCEDURAL HISTORY

Astrazeneca is the manufacturer of Prilosec, a drug used to treat heartburn and related diseases. The generic term for Prilosec is omeprazole. In 2000,

---

[1] Plaintiffs are Teamsters Local 237 Welfare Fund, Local 237 Teamsters Retirees' Benefit Fund, Local 237 Teamsters-Plainview-Old Bethpage Central School District Health and Welfare Trust Fund, Local 237 Teamsters-North Babylon School District Health and Welfare Trust Fund, Local 237 Teamsters-Brentwood School District Health and Welfare Trust Fund, and Local 237 Teamsters-Suffolk Regional Off-Track Betting Corporation Health and Welfare Trust Fund, on behalf of themselves and others similarly situated.

Prilosec generated approximately $6 billion in sales for Astrazeneca. Astrazeneca's patent for Prilosec was set to expire in 2001.[2]

Plaintiffs are six New York-based union health and benefit funds that allegedly reimbursed for their members' purchases of Astrazeneca products in fifteen different states.[3] Plaintiffs contend that Astrazeneca, a Delaware company, engaged in consumer fraud by introducing an essentially identical drug called Nexium to the market when generic omeprazole became available as over-the-counter "Prilosec OTC."[4] Plaintiffs allege that Astrazeneca falsely represented Nexium to be superior to Prilosec in an effort to keep Astrazeneca's market share dominant after losing its patent for Prilosec.[5]

Plaintiffs filed their original class action complaint on November 18, 2004. An amended complaint was filed on February 16, 2005. Defendants filed a motion to dismiss on March 3, 2005. On May 4, 2005, the Court entered a stipulated order

---

[2] Second Amended Class Action Complaint ("SAC") ¶ 2.
[3] Including Delaware, Arizona, Colorado, Connecticut, Florida, Hawaii, Kentucky, Louisiana, Missouri, New Jersey, New Mexico, New York, Pennsylvania, Tennessee, and Washington. *Id.* ¶ 27.
[4] *Id.* ¶ 11.
[5] According to Plaintiffs, Astrazeneca's strategy was to (1) precondition Prilosec users toward Nexium; (2) aggressively identify and profile Prilosec users; (3) position the "makers of Prilosec" as category experts; (4) rapidly convert Prilosec users to Nexium users; (5) create immediate awareness of Nexium as a Prilosec upgrade; and (6) build awareness of Nexium as a Prilosec upgrade. The marketing campaign at issue involved both physician-directed marketing and direct-to-consumer marketing. *Id.* ¶¶ 4-10.

to stay the proceedings because parallel litigation in the District Court had been instituted.[6]

The District Court case was styled as *Pennsylvania Employee Benefit Trust Fund v. Zeneca* (hereinafter "*Zeneca*") and involved a putative class of plaintiffs from Pennsylvania, New York, and Michigan.[7] Defendants moved to dismiss on grounds that, *inter alia*, Plaintiffs' claims were preempted by federal law. Plaintiffs appealed, and the Third Circuit affirmed.[8] In 2009, the United States Supreme Court remanded the case to the Third Circuit with instructions to reconsider the case in light of another then-recent decision wherein the Court held that state consumer protection laws were not preempted by federal law in all cases.[9]

On May 6, 2010, following remand from the Third Circuit, the District Court again dismissed the complaint.[10] Specifically, the District Court held: (1) under a Delaware choice of law analysis, the law of the plaintiffs' home states controlled

---

[6] *See Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*, 2005 WL 2993937 (D. Del. Nov. 8, 2005) *aff'd sub nom. Pennsylvania Employees Ben. Trust Fund v. Zeneca Inc.*, 499 F.3d 239 (3d Cir. 2007) *cert. granted, judgment vacated*, 556 U.S. 1101, 129 S. Ct. 1578, 173 L. Ed. 2d 672 (2009).

[7] 710 F.Supp.2d 458 (D. Del. 2010) (ruling on Defendant's motion to dismiss).

[8] 499 F.3d 239 (3d Cir. 2007).

[9] 556 U.S. 1101 (2009) (citing *Wyeth v. Levine*, 555 U.S. 555 (2009)).

[10] *Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*, 710 F.Supp.2d 458 (D. Del. 2010) (hereinafter "*Zeneca*").

the claims;[11] (2) the complaint failed to state a claim under each of the respective states' consumer protection laws;[12] (3) there was no adequate causal connection between Defendants' alleged misrepresentations and Plaintiffs' decision to purchase Nexium over Prilosec such that the unjust enrichment claim could survive dismissal;[13] and (4) the complaint did not contain allegations of reliance such that the claim for negligent misrepresentation could survive dismissal.[14] Although the District Court granted leave to do so, Plaintiffs did not file an amended complaint, nor did Plaintiffs appeal the decision.

Following the District Court's decision, on August 8, 2010, the Court granted Plaintiffs' motion to lift the stay on the instant action. Unfortunately, and without much explanation, more than three years passed without any action taken by either party.[15] On October 4, 2013, Astrazeneca moved to dismiss the action in this Court for failure to prosecute. After a status conference with the then-presiding judge, the Court denied the motion and issued a scheduling order. On

---

[11] *Id*. at 466-470.

[12] Specifically, the Pennsylvania plaintiffs' claims could not survive dismissal because the complaint did not allege justifiable reliance on Defendant's marketing/advertising campaigns as required by Pennsylvania law, *id*. at 471-73; the New York plaintiff's claims did not sufficiently allege causation, as required by New York law, *id*. at 473-75; and the Michigan plaintiffs' claims failed because the plaintiffs did not have standing under the Michigan Consumer Protection Act, *id*. at 475-77.

[13] *Zeneca*, 710 F.Supp.2d at 477.

[14] *Id*. at 477-78.

[15] This case was reassigned to this judge on January 15, 2014. Representations made by counsel during oral argument before this Court on April 23, 2015 offered little explanation for the delay.

April 4, 2014, pursuant to the scheduling order, Plaintiffs filed the Second Amended Class Action Complaint (the "SAC").

The SAC before this Court alleges (1) violations of the Delaware Consumer Fraud Act ("DCFA");[16] (2) violations of the other 14 individual state consumer protection statutes wherein Plaintiffs are alleged to have purchased Nexium; (3) unjust enrichment; and (4) negligent misrepresentation. The SAC differs from the original class action complaint in two respects: it removes claims for tortious interference, and raises new factual allegations that Astrazeneca engaged in an illegal "pay-for-delay" or "reverse" settlement scheme with potential generic manufacturers of Nexium in order to maintain Astrazeneca's dominance over the omeprazole market. The "pay-for-delay" activities allegedly occurred in 2008.[17]

On May 8, 2014, Astrazeneca filed a notice of removal to the District Court. Defendants sought removal on the basis that the new "reverse settlement" and "pay-for-delay" allegations raised a new and distinct claim, which gave the federal court jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").[18] Plaintiffs disagreed and moved to remand the case back to this Court. By order

---

[16] 6 *Del. C.* § 2513 *et. seq.*

[17] *See* SAC ¶ 7, 114-15, n. 62. The "pay-for-delay" allegations are the subject of Defendants' alternative motion to strike certain allegations in the Second Amended Complaint. Because this Court grants Defendants' motion to dismiss, this Court does not reach the merits of Defendants' alternative motion to strike.

[18] 28 U.S.C. §1332(d), 1453, and 1711-1715.

dated November 18, 2014, the District Court granted Plaintiffs' motion.[19]  The District Court concluded that the new allegations related back to the date of the original filing, which occurred before the enactment of CAFA, and, therefore, CAFA did not apply.[20]

After remand, Defendants filed the instant motion to dismiss and a briefing schedule was issued.  Defendants also filed a separate motion to strike the allegations concerning the "pay-for-delay" scheme from the SAC.  A hearing was held on both motions on April 23, 2015.

On May 7, 2015, Plaintiffs filed a "Notice of Supplemental Authority" and attached two cases from the Northern District of California, which purport to bolster Plaintiffs' argument against dismissal.[21]  On May 12, 2015, Defendants filed their response which urged the Court to disregard the cases as inapposite.[22] On May 14, 2015, Plaintiffs filed a "Response in Furtherance of their Notice of Supplemental Authority," again urging this Court to consider the California cases,

---

[19] *Teamsters Local 237 Welfare Fund, et. al. v. Astrazeneca Pharmaceuticals L.P., et al.*, Civ. No. 140587-SLR (D.Del. 2014).
[20] *Id*. at 3-6.
[21] *In re Lidoderm Antitrust Litig.*, -- F.Supp.3d --, 2015 WL 2088223 (N.D. Cal. May 5, 2015) (hereinafter "*Lidoderm I*"); *United Food & Commer. Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, -- F.Supp.3d --, 2014 WL 6465235 (N.D. Cal Nov. 17, 2014) (hereinafter *Lidoderm II*) (collectively, "*In re Lidoderm*").
[22] Specifically, Defendants note that *In re Lidoderm* considered only the issue of whether third-party payers have standing to assert an antitrust claim under the laws of the states in which their members purchased a drug.  *See* Def.'s Response (*citing Lidoderm I*, at \*87-88; *Lidoderm II*, at \*32-65).

and restating their disagreement with Defendants' position.[23]  On May 18, 2015, Defendants filed a "Further Response Re: Plaintiffs' Notice of Supplemental Authority."

Having considered the briefs and submissions of the parties, exhibits and appendices attached thereto, relevant case law and authorities, and the oral arguments of the parties, the matter is ripe for review.

### III.   STANDARD OF REVIEW

When deciding a motion to dismiss for failure to state a claim under Superior Court Rule 12(b)(6), all-well pleaded allegations in the complaint are to be accepted as true,[24] and the Court must draw all reasonable inferences in favor of the non-moving party.[25]  The complaint will be dismissed only if it appears to a certainty that under no set of facts which could be proved to support the claim asserted would Plaintiff be entitled to relief.[26]

---

[23] In this filing, Plaintiffs attempt to inject the fact that Defendants "effectuate[d] [a] $20 million class settlement of similar allegations" under Massachusetts law into the record in this case. Pltfs.' Further Response at 1 (citation omitted).  Plaintiffs' eleventh-hour submission fails to persuade this Court to reconsider its disposition of the case.

[24] *Spence v. Funk*, 396 A.2d 967 (Del. 1978).

[25] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002).

[26] *Id.*

## IV.  DISCUSSION

The Court will first undertake a choice of law analysis to determine what law should apply to the claims at issue in this case.  The Court will next apply the controlling state law to Plaintiffs' claims.  Finally, the Court will address any supplemental issues concerning the disposition of this case.

### A.    *Choice of Law*[27]

In *Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.* ("*Zeneca*"),[28] the District Court applied Delaware's choice of laws principles and determined that the law of each of the plaintiffs' residence or place of business controlled the consumer fraud claims they asserted against Astrazeneca.[29]  The Court notes that the allegations are essentially identical to those alleged in the instant complaint.[30]

Defendants argue the same analysis undertaken in *Zeneca* should apply in this action, and accordingly, this Court should reach the same conclusion: that the

---

[27] On April 6, 2015, the Delaware Supreme Court issued its ruling on an interlocutory appeal concerning choice of law in *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045 (Del. 2015). The Court emphasized Delaware's public policy interest in "avoid[ing] contributing to forum-shopping[,]" and urged trial courts to be "extremely cautious not to intrude on the legitimate interests of other sovereign states." *Id.* at 1052.  This Court acknowledges the ruling of *Bell Helicopter* on a general choice of law analysis.  However, *Bell Helicopter* was issued after the close of briefing on the instant motion, and this Court does not find that any additional briefing regarding that case would change the disposition of this matter.

[28] 710 F.Supp.2d 458 (D. Del. 2010) (Robreno, J.).

[29] *See*, *e.g.*, *id.* at 471-72 (finding that the "location of Defendants' principal place of business stands, at best, in equipoise with the residence/place of business of plaintiffs.  The fact that Defendants 'made' the alleged misrepresentations, i.e., orchestrated the allegedly deceptive marketing campaigns, in Delaware does not weigh more strongly than the other factors . . . .").

[30] *Id.* at 464-65.

law of Plaintiffs' principal place of business—New York—applies to their claims. Defendants argue that to the extent that Plaintiffs received and acted in reliance upon the challenged marketing practices, they did so in New York. New York law governs Plaintiffs' contractual relationship with their members; Plaintiffs' headquarters, their decisions to reimburse, and their money payments for Nexium are located in New York.[31]

Plaintiffs contend that Delaware law should apply because (1) Delaware has the most significant relationship to the action because the alleged deceptive marketing practices "emanated from" Delaware; (2) Plaintiffs' members purchased Nexium in 14 different states, including Delaware, where the purchase of Nexium at the pharmacy counter should be considered the location of the injury; and (3) there is no conflict between Delaware law and the law of the 14 states where Plaintiffs' members reside, such that Delaware law should apply to all claims. Plaintiffs further argue that the District Court's analysis was erroneous, yet concede that no application was made to that Court by motion, appeal, or otherwise to reconsider Plaintiffs' position. Rather, Plaintiffs ask this Court, in effect, to "correct" the District Court's ruling, which would be inconsistent with and contrary to that court's prior analysis and conclusions.

---

[31] Defs. Op. Br. at 10 (citing SAC at ¶¶ 18-23; *In re K-Dur Antitrust Litig.*, 2008 WL 2660783, at *5) (D.N.J. Mar. 19, 2008).

A preliminary step when confronting a choice of law determination is to identify the jurisdictions whose laws might apply to a claim and determine if those laws are materially different from one another.[32] If they are not materially different, then there is a "false conflict," and the forum state's law applies.[33] If there is a material difference, the Court applies the "most significant relationship" test in order to determine what law should apply.[34] In applying the most significant relationship test, Sections 6, 145, and 148 of the Restatement (Second) of Conflict of Laws (the "Restatement") are implicated.[35]

### 1. General Choice of Law Principles

Section 6 of the Restatement provides the foundation of the most significant relationship test:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
>
> > (a) the needs of the interstate and international systems;
> > (b) the relevant policies of the forum;

---

[32] *Parlin v. Dyncorp Intern., Inc.,* 2009 WL 3636756, at *3 n. 16 (Del. Super. Ct. Sept. 30, 2009).

[33] *Shook & Fletcher Asbestos Settlement Trust v. Safety Nat. Cas. Corp.*, 2005 WL 2436193, at *5 (Del. Super. Sept. 29, 2005) *aff'd,* 909 A.2d 125 (Del. 2006).

[34] *Travelers Indemnity Co. v. Lake*, 594 A.2d 38, 47 (D. Del. 1991).

[35] *Zeneca*, 710 F.Supp.2d at 468.

11

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability, and uniformity of result; and

(g) ease in the determination and application of law to be applied.

Section 145 of the Restatement provides a general framework for the most significant relationship test with respect to tort actions, and provides that contacts to be taken into account in applying the principles of Section 6 include:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

12

Section 148 "recasts the rule set forth in § 145 with greater precision with respect to fraud or misrepresentation claims."[36] Section 148 presents two alternative subparts; the first deals with the location of plaintiff's action taken in reliance occurring in the same state where the false representation was made:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The second subsection to § 148 sets forth factors to consider where the plaintiff's action taken in reliance occurred in a different state from where the false representation occurred:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,

---

[36] *Id.*

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

### 2. *Application of Choice of Law Principles*

This Court first examines the competing laws at issue to determine whether an actual conflict exists.[37] The dispute arises in this case over whether the laws of Delaware, New York, or the 14 states in which each of Plaintiffs' individual union members reside, apply to the respective consumer fraud claims. Plaintiffs argue that there is no conflict between the laws of Delaware and the 14 states in which the union members reside, and therefore Delaware law should apply to their claims. Defendants argue there is a conflict, requiring the application of New York law.

At the outset, the Court finds that the competing laws at issue are the laws of Delaware and New York. The Court is not persuaded by Plaintiffs' argument that the law of each of the 14 states in which individual union members reside should apply to the claims, because, according to Plaintiffs, that is where their members

---

[37] *See Zeneca*, 710 F.Supp.2d at 468.

14

most likely purchased Nexium. The Court finds that Plaintiffs are third-party payer unions providing benefits for current and former New York City employees. While some of the individual members may currently reside elsewhere, and thus may have purchased Nexium "in nearly two-thirds of the United States,"[38] New York is the place with the most significant interest in enforcing its consumer protection laws in this action. Plaintiffs are headquartered in New York where their contractual relationships with their members, their decisions to reimburse for Nexium, and their money payments necessarily were made.[39] The Restatement instructs that when considering the relevant contacts to apply, "the domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant."[40] It logically follows that New York law best protects the third-party payers' justified expectations with respect to their consumer fraud claims. Accordingly, when conducting its choice of law analysis, this Court will consider the laws of Delaware and New York as the competing interests in this case.

---

[38] SAC ¶ 27.

[39] Def.'s Op. Br. at 10 (citing *In re K-Dur Antitrust Litig.*, 2008 WL 2660783, at *5 (D.N.J. Mar. 19, 2008)).

[40] Restatement (Second) of Conflict of Laws § 148 cmt. i. *See also In re K-Dur Antitrust Litig.*, 2008 WL 2660783 (D.N.J. Mar. 19, 2008) ("[T]he state with the greatest interest in a [third party payer's] claims brought on its own behalf is the state where the [third party payer] has its own principal place of business and from which it presumably paid the alleged supracompetitive prices.").

Of note is that in *Zeneca*, the District Court conducted an extensive analysis of the consumer protection laws of Delaware and New York.[41] The *Zeneca* court concluded that an actual conflict between New York and Delaware law exists because New York law requires some awareness, if not reliance, on defendant's misrepresentation, and Delaware law does not.[42]

Specifically, the Delaware Consumer Fraud Act ("DCFA") provides, in pertinent part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.[43]

Accordingly, reliance is not a required element in establishing a misrepresentation claim under the DCFA.[44]

Under New York State General Business Law Section 349 ("GBL 349"), to state a claim for misleading and deceptive business practices, Plaintiffs must show:

> First, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.[45]

---

[41] *Zeneca*, 710 F.Supp.2d at 473-75.
[42] *Id*. at 474.
[43] 6 *Del. C.* §2513.
[44] *See Stephenson v. Capano Dev. Inc.*, 462 A.2d 1069 (Del. 1983).
[45] *Zeneca*, 710 F.Supp.2d at 472 (quoting *Vitolo v. Mentor H/S, Inc.*, 426 F.Supp.2d 28, 33 (E.D.N.Y. 2006)). For an act to be "deceptive" under GBL 349, it must be likely to mislead a reasonable consumer. *Id*. (citing *Marcus v. AT&T Corp.*, 128 F.3d 46, 63-64 (2d Cir. 1998).

16

Although a New York plaintiff need not prove individual reliance, he must nevertheless "show that the defendant's act caused the complained-of injury."[46] This requires a showing that the plaintiffs were at least aware of the deceptive marketing practice.[47]

Plaintiffs contend that there is no conflict between Delaware and New York law with respect to the issue of causation in a consumer fraud claim.[48] This Court disagrees. This Court finds the analysis in *Zeneca* is most persuasive, and agrees that an actual conflict exists between Delaware and New York law, specifically with respect to the elements of causation in a consumer fraud claim.

Having determined that there is an actual conflict between the laws of the proposed states with respect to the issue at hand, the Court now turns to its analysis under §148. The Court must first determine the applicable subsection.[49] Finally, the Court will weigh this conclusion in accordance with the factors enumerated in §6.[50]

In *Zeneca*, the Court found that the second subsection of §148 applies to the alleged consumer fraud in that case, because:

---

[46] *Id*. (citations omitted).
[47] *Id*. (citing *Pelman v. McDonald's Corp.*, 396 F.Supp.2d 439, 444-46 (S.D.N.Y. 2005) (dismissing a class action complaint against a fast food restaurant for allegedly deceptive marketing practices)).
[48] Pltfs. Opp. Br. at 23-24.
[49] *Zeneca*, 710 F.Supp.2d at 470.
[50] *Id*.

17

> [the] alleged misrepresentations underlying plaintiffs' claims were 'made' in Delaware because that is the place where the substance of the factual statements emanated. In other words, the alleged misrepresentations at issue were made in Delaware and then repeated in the Plaintiffs' home states.[51]

This Court agrees with the conclusions of the District Court in *Zeneca*, because the District Court was confronted with the same attendant facts and circumstances as are present in this case. Accordingly, the Court will apply the second subsection of §148 in conducting its "most significant relationship" analysis.[52]

Section 148(2) instructs that the Court must consider factors such as the location where plaintiff received and acted in reliance upon defendant's representation, the place where defendant made the representation, the parties' respective places of business, and the place where the tangible thing which is the subject of the action is located. This Court finds that §148(2) supports the application of New York law to the instant action for the following reasons: (1) Plaintiffs "received" Defendants' representations in New York, because that is where Plaintiffs were located when they paid for Nexium; (2) Plaintiffs "acted in reliance upon" any allegedly deceptive statements in New York because that is

---

[51]710 F.Supp.2d at 470.

[52] Even if this Court conducted its analysis under §148(1), and determined that Plaintiffs' action in reliance on Defendants' alleged false representations took place in Delaware, this Court would conclude that New York has a *more* significant relationship to this action than does Delaware under the principles set forth in Section 6 of the Restatement. Section 148(1) contemplates such a balancing, and so for the reasons stated, New York law shall apply to this action.

where they reimbursed their members for the purchase of Nexium; and (3) Plaintiffs' place of business is New York.[53] Although the Court recognizes that Defendants' place of business is Delaware, and the fact that Plaintiffs' individual union members may have purchased Nexium in pharmacies across the country before Plaintiffs reimbursed for said payments, those factors do not outweigh the factors which heavily favor the application of New York law to this action.

Consistent with the conclusions of the *Zeneca* court, this Court finds that the factors under §148 require the application of New York law to Plaintiffs' claims. Further, this Court finds that §6 does not countervail the presumption that New York law should apply. GBL 349 represents the New York legislature's intent to protect consumer injury and harm to the public interest in that state.[54] "In light of the strong governmental interest in shielding consumers from fraudulent practices embodied in GBL 349, New York has at least as strong an interest as Delaware in having its law apply."[55] This Court agrees with the *Zeneca* court that "a balancing

---

[53] *See Zeneca*, 710 F.Supp.2d at 471 (discussing the application of § 148(2) to Pennsylvania law); *Id*. at 475 n.8 (stating that "the Court's analysis of the second and third prongs of the conflict of laws issue are essentially identical with respect to each Plaintiff's home state").

[54] *Zeneca*, 710 F.Supp at 475 (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000) (explaining that GBL § 349 was designed to augment the Attorney General's power to curtail deceptive trade practices toward consumers, and was later expanded to allow for a private right of action).

[55] *Id*.

of the relevant policies of the respective forums supports the conclusion that New York maintains the most significant relationship to the instant dispute."[56]

B.    *Application of New York Law*

To state a claim for relief under GBL § 349, the SAC must allege that the injury complained of was the result of the deceptive act, practice, or advertisement.[57] This Court finds that the SAC fails to meet this standard because it does not allege that that Plaintiffs purchased Nexium in response to Defendants' representations concerning the quality of Nexium in relation to Prilosec.[58]

While it is not necessary under New York law to plead justifiable or reasonable reliance, Plaintiff must nevertheless show "some awareness" of a defendant's misrepresentation prior to purchasing the product in order to establish the element of causation.[59] To plead deceptive advertising to the public, generally, is insufficient. The SAC does not allege that Plaintiffs ever received such advertising, or that Defendants' alleged misrepresentations ever played a role in their decisions about whether to pay or reimburse for Nexium. Further, the SAC

---

[56] *Id.*

[57] *Zeneca*, 710 F.Supp.2d at 480 (citing *Nealy v. U.S. Surgical Corp.*, 587 F.Supp.2d 579 (S.D.N.Y. 2008)).

[58] Because the Court finds Plaintiffs have failed to adequately plead causation, the Court assumes without deciding that Plaintiffs have standing to pursue their claims under GBL § 349. Additionally, because the issue of causation is dispositive, the Court does not reach the issue of whether Plaintiffs have adequately pleaded injury within the meaning of GBL §349.

[59] *Zeneca*, 710 F.Supp.2d at 474.

does not contain allegations about what advertisements their members or their members' physicians may have seen, or that they were misled by the allegedly deceptive acts. Therefore, any purported chain of causation that runs from the allegedly deceptive advertisements that may have influenced the decisions of individual doctors to prescribe a drug to their patients to causally affect the payer unions in this case is simply too attenuated. "[T]here are many factors that a doctor may consider in determining what medication to administer to a given patient," and "doctors are presumed to go beyond advertising medium and use their independent knowledge in making medical decisions."[60]

Because the Court finds that the complaint has not adequately stated a claim for consumer fraud under New York law specifically with regard to the issue of causation, those claims must be dismissed.

C.    *Unjust Enrichment and Negligent Misrepresentation*

The Court reaches the same conclusion as in *Zeneca* with respect to the claims for unjust enrichment and negligent misrepresentation.

---

[60] *Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F.Supp.2d 1270, 1280-81 (S.D.Fla. 2009), *aff'd*, 444 F.App'x. 401, 404 n.1 (11th Cir. 2011) (citing cases from the Southern District of West Virginia, the Northern District of California and the Ninth Circuit, the Southern District of Illinois, the Middle District of Florida, and the District of New Jersey which follow this approach to causation).

As to the unjust enrichment claim, this Court finds that there is no conflict of law between the elements of such a claim and thus will apply Delaware law.[61] To make out a claim for unjust enrichment, Plaintiffs must allege: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law.[62] The Court finds that, for the reasons stated with respect to causation for Plaintiffs' consumer fraud claims, Plaintiffs fail to establish a causal connection between the alleged "enrichment" and the alleged "impoverishment" in this case. Accordingly, the SAC fails to state a claim for unjust enrichment and must, therefore, be dismissed.

As to the negligent misrepresentation claim, the Court also finds there is no conflict and will apply Delaware law to the elements of the claim.[63] To make out a claim for negligent misrepresentation, Plaintiffs must allege: (1) a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) failure to exercise reasonable care in obtaining or communicating information; and (4) a pecuniary loss caused by justifiable reliance upon false information.[64] Further,

---

[61] *See Zeneca*, 710 F.Supp.2d at 477 (citing *Powers v. Lycoming Engines* 245 F.R.D. 226, 231 (E.D.Pa. 2007)).

[62] *Nemec v. Schrader*, 991 A.2d 1120, 1130-31 (Del. 2010).

[63] *Zeneca*, 710 F.Supp.2d at 477-78.

[64] *Id*. at 485-86 (citing *Atwell v. RHIS, Inc.*, 2006 WL 268532, at *1 (Del. Super. Ct. Aug. 18, 2006).

22

Plaintiffs must assert that they relied upon the misrepresentation.[65] For the reasons set forth above, and for those addressed by the District Court in *Zeneca*, the SAC fails to allege that Plaintiffs relied upon, or were even aware of, Defendants' allegedly deceptive marketing campaigns before making reimbursement decisions for Nexium. Because the SAC does not allege reliance, the claim for negligent misrepresentation must be dismissed.

D.    *Dismissal is with Prejudice*

The Court finds that dismissal with prejudice is appropriate. Plaintiffs have had ample opportunity to amend their pleadings since 2004 to cure the defects identified in *Zeneca*. This case was dormant in this Court for over three years. No application for reconsideration, re-argument, appeal or otherwise was made by Plaintiffs in the District Court. Plaintiffs do not proffer any way that they could amend or address the defects described above, but request instead a different result than what was reached in the District Court. This Court cannot grant Plaintiffs' request.

---

[65] *Id*. at 486 (citing *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129-142-43 (Del. Ch. 2003)).

## V.    CONCLUSION

For the reasons stated, this Court finds that Plaintiffs have failed to state a claim under applicable law, and Defendants' motion to dismiss is therefore **GRANTED**.  The matter is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla